NO. 4-07-0495          Filed 4/21/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE UNITED FARM FAMILY MUTUAL INSURANCE COMPANY, an Indiana Corporation, | ) Appeal from<br>) Circuit Court of |
|      Plaintiff-Appellee, | ) Pike County |
|      v. | ) No. 06MR4 |
| JOSEPH A. FRYE, as Personal | ) |
| Representative of the Estate of JOSEPH | ) |
| FRYE, Deceased; and JAMIE THOMPSON, as | ) |
| Special Representative of the Estate of | ) Honorable |
| WILMA F. FRYE, Deceased, | ) Richard D. Greenlief, |
|      Defendants-Appellants. | ) Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

In July 2003, husband Joseph Frye (Joseph-deceased) and wife Wilma F. Frye, both residents of Indiana, died as a result of injuries sustained in an automobile collision on an Illinois roadway. The accident occurred while the parties were in an automobile insured under a policy issued in Indiana by plaintiff, United Farm Family Mutual Insurance Company (Farm Bureau), an Indiana corporation.

In July 2005, defendant, Joseph A. Frye (Joseph-estate), personal representative of the estate of Joseph-deceased, filed a wrongful-death action against Jamie Thompson, special representative of Wilma's estate, in the Pike County circuit court. Farm Bureau hired counsel, Larry Kuster, to represent Wilma's estate in the wrongful-death action.

In February 2006, Farm Bureau filed its complaint for

declaratory judgment.  In its complaint, Farm Bureau asserted it had no duty to defend or indemnify Wilma's estate in the wrongful-death action.  Farm Bureau also asserted the estate of Joseph-deceased could not recover as an uninsured motorist (UIM).

In March 2007, the Pike County circuit court granted Farm Bureau's motion.  Defendant Joseph-estate appealed.  On appeal, Joseph-estate argues (1) the policy issued to Joseph-deceased and Wilma is internally inconsistent and inherently ambiguous; (2) the estate of Joseph-deceased is entitled to UIM coverage under Illinois public policy; and (3) Farm Bureau should be estopped from raising coverage defenses for its delay in filing the declaratory-judgment action.  We affirm.

## I. BACKGROUND

Wilma and Joseph-deceased, wife and husband, resided together in Munster, Indiana.  They secured an automobile insurance policy from Farm Bureau to cover the period of June 16, 2003, through December 16, 2003 (Policy).  The 2001 Saturn insured by the Policy was licensed and registered in Indiana, and it was principally located in Indiana but occasionally driven outside that state.  Joseph-deceased and Wilma purchased the Policy in Indiana.

On July 3, 2003, Wilma and Joseph-deceased were involved in an automobile accident, which resulted in their deaths. The accident occurred in Pike County, Illinois.  The Policy

provided coverage to Joseph-deceased and Wilma under the medical-expense-and-physical-damage coverages.  Payments pursuant to the Policy coverages totaled over $62,000, for medical expenses, death benefits, and property damage.

In June 2005, Joseph-estate demanded the policy limits from Farm Bureau under the liability and UIM coverages in the Policy.  In July 2005, Joseph-estate filed a wrongful-death complaint on behalf of the estate of his father, Joseph-deceased, against Wilma's estate in Pike County, in an effort to secure for the estate the $100,000 policy limit for liability.  In the complaint, Joseph-estate alleged Wilma caused the collision when attempting a U-turn.

Farm Bureau provided Wilma's defense in the pending wrongful-death action.  In August 2005, Larry Kuster entered an appearance on behalf of Wilma's estate.  Farm Bureau, in providing the defense, did not make a reservation of rights.  Also, in August 2005, Wilma's estate moved to dismiss the wrongful-death case.  This motion was denied in December 2005.  Wilma's estate petitioned this court for interlocutory appeal; we denied the request.  Frye v. Thompson, No. 4-06-0090 (February 23, 2006) (leave to appeal denied).

In February 2006, Farm Bureau filed its complaint for declaratory judgment.  Farm Bureau set forth two claims.  In the first claim, Farm Bureau maintained it had no duty to defend or

indemnify Wilma's estate because the Policy excludes liability coverage for claims between insured spouses.  Farm Bureau relied upon the household exclusion in the Policy:

**"EXCLUSIONS--What we will not cover.**

This insurance does not apply to:

* * *

15.  **bodily injury** to the **insured** or to any person related to the **insured** by blood, marriage[,] or adoption and who is a resident of the same household as the **insured."**

In the second claim of its complaint, Farm Bureau asserted it had no duty to defend or indemnify Wilma's estate under the UIM coverage, because the Policy excludes coverage for vehicles that are insured under the Policy (owned-vehicle exclusion).

**"INSURING AGREEMENT - What we will pay under Coverage K.**

**We** will pay **damages** for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured** or **underinsured motor vehicle**.  The **bodily injury** must be caused by an **accident** arising out of the ownership, maintenance[,] or use of an **uninsured** or **underinsured motor**

**vehicle**."

The Policy defines "uninsured motor vehicle" as, in part, "a land motor vehicle licensed for highway use" but excludes a land motor vehicle "insured under the liability coverage of this policy."

Upon Farm Bureau's motion for summary judgment, the circuit court entered declaratory judgment in Farm Bureau's favor. This appeal followed.

## II. ANALYSIS

Joseph-estate sets forth three main arguments on appeal: (1) the Policy is internally inconsistent and inherently ambiguous; (2) Illinois public policy requires the estate of Joseph-deceased be compensated under the UIM coverage; and (3) Farm Bureau should be estopped from raising coverage defenses because it delayed filing the declaratory-judgment action. We begin with the second argument.

### A. Indiana Law Applies

Joseph-estate's second argument turns on whether Illinois or Indiana law applies. To answer this question, we begin by ascertaining whether a conflict between the laws of these states exists. See McGrew v. Pearlman, 304 Ill. App. 3d 697, 701, 710 N.E.2d 125, 128 (1999). One does.

Illinois and Indiana have considered the legality of using the owned-vehicle exclusion to deny UIM coverage and

reached different conclusions. In Illinois, courts have refused to enforce the owned-vehicle exclusion. For example, in Squire v. Economy Fire & Casualty Co., 69 Ill. 2d 167, 179, 370 N.E.2d 1044, 1049 (1977), the court concluded the Illinois Insurance Code "requires coverage of insured persons regardless of the motor vehicle the uninsured motorist is driving, and regardless of the vehicle in which the insured person is located when injured." The Squire court based its holding on section 143a of the Insurance Code (215 ILCS 5/143a (West 2002)), which requires liability insurance policies to cover insureds "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." See also Squire, 69 Ill. 2d at 179, 370 N.E.2d at 1049.

Indiana courts, however, have concluded owned-vehicle exclusions do not violate Indiana law. In United Farm Bureau Mutual Insurance Co. v. Hanley, 172 Ind. App. 329, 360 N.E.2d 247 (1977), the court was faced with an argument similar to the one Joseph-estate makes here. Two sons of the insured were, with permission, in the vehicle of another. One son was driving; the other was a passenger. Both sons were insureds under the policy. They were in an accident that left the driving son dead and the other injured. See Hanley, 172 Ind. App. at 330, 360 N.E.2d at 248. The injured son sought compensation for his injuries under the liability coverage and the UIM coverage of the policy.

Because the household exclusion applied, the injured son was barred from recovering under the liability portion of the policy. The injured son then argued the UIM provisions were triggered. Hanley, 172 Ind. App. at 333, 360 N.E.2d at 248. The Hanley court found recovery barred, upon concluding the combination of the exclusions did not violate Indiana law. The Hanley court noted decisions in Illinois "awarded [UIM] coverage to insureds who were otherwise excluded from liability coverage by operation of the household exclusion," but it called this the minority view and refused to follow it. Hanley, 172 Ind. App. at 335, 360 N.E.2d at 250.

Joseph-estate concedes under normal conflict-of-law analysis, Indiana law would apply. We agree. Absent a choice-of-law provision, we look to Illinois choice-of-law rules to ascertain the applicable law. See Westchester Fire Insurance Co. v. G. Heileman Brewing Co., 321 Ill. App. 3d 622, 628, 747 N.E.2d 955, 961 (2000). Under Illinois choice-of-law rules for insurance contracts, Illinois courts use the "most significant contacts" test. Westchester Fire Insurance, 321 Ill. App. 3d at 628, 747 N.E.2d at 961. Insurance policies "are '"governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to

the general contract."'" <u>Westchester Fire Insurance</u>, 321 Ill.

App. 3d at 629, 747 N.E.2d at 961, quoting <u>Lapham-Hickey Steel</u>

<u>Corp. v. Protection Mutual Insurance Co.</u>, 166 Ill. 2d 520, 526-

27, 655 N.E.2d 842, 845 (1995), quoting <u>Hofeld v. Nationwide Life</u>

<u>Insurance Co.</u>, 59 Ill. 2d 522, 528, 322 N.E.2d 454, 457-58

(1975). All of these considerations lean toward applying Indiana

law.

Joseph-estate argues, however, Illinois public policy

requires the application of Illinois law here. He contends

Illinois courts have called the owned-vehicle exclusion "illegal

and unenforceable" and the enforcement of an "illegal" exclusion

would violate Illinois public policy. Joseph-estate further

maintains Illinois has an interest in protecting the individuals

who are injured on its roadways.

To determine Illinois public policy, we look to our

constitution, the legislative enactments, and decisions of the

courts. See <u>Morris B. Chapman & Associates, Ltd. v. Kitzman</u>, 193

Ill. 2d 560, 569, 739 N.E.2d 1263, 1270 (2000). As shown above,

the decisions of Illinois courts have interpreted section 143a as

rendering owned-vehicle exclusions "illegal and unenforceable."

See <u>Squire</u>, 69 Ill. 2d at 179, 370 N.E.2d at 1049.

We conclude Joseph-estate is not asking the correct

question of what Illinois public policy would allow. The

question is not simply whether Illinois public policy would want

to prevent harm to individuals on its roadways.  While we agree Illinois would want to protect these individuals from harm while in Illinois, we do not agree this shows Illinois public policy requires Illinois law to govern how out-of-state residents can contract with their insurance companies to be fiscally protected or compensated for injuries sustained in another state.

Rather, the true question is whether Illinois public policy mandates Illinois law governs a purely Indiana insurance contract: one between two individual residents and a corporate resident, involving a vehicle licensed in Indiana, which happens to be involved in an accident in Illinois.  Joseph-estate has not shown Illinois public policy requires this court to interject Illinois law here.  No Illinois resident claims he was denied coverage under the suit.  The liability coverage would have applied to any Illinois resident injured as a result of Wilma's negligence.  Moreover, section 143a, upon which Illinois courts rely to find such exclusions "illegal and unenforceable," explicitly applies only to vehicles registered or garaged in Illinois.  See 215 ILCS 5/143a (West 2002).  Section 143a thus cannot serve as the basis for concluding a vehicle registered in Indiana by Indiana residents must provide the UIM coverage to cover injuries to other Indiana-resident members of their household simply because the vehicle is driven in Illinois. Indiana has ascertained its residents can bargain away such

coverage, which likely results in lower premiums.  The holding Joseph-estate seeks would require this Illinois court to interfere with Indiana's ability to determine whether lower premiums or greater coverage is better for Indiana citizens when Illinois residents are not affected.

Indiana law applies to this contract.  Under Indiana law, the owned-vehicle exclusion prevents Joseph-estate's recovery of damages under the UIM coverage of the Policy.

B. The Policy Is Not Internally Inconsistent or Ambiguous

Joseph-estate argues he is nevertheless entitled to the UIM coverage because the Policy is internally inconsistent and inherently ambiguous.  Joseph-estate maintains the Policy's household exclusion renders Wilma an UIM, while the owned-vehicle exclusion renders her an insured motorist, creating an absurd result.  Joseph-estate contends the two exclusions combined provide "the legal protection equivalent to wet tissue paper."

Farm Bureau responds by asserting the Policy contains provisions interpreted and enforced by courts in Indiana.  We agree with Farm Bureau.

Having determined Indiana law permits the two clauses, we cannot find an inherent inconsistency between the household exclusion and the owned-vehicle exclusion.  As shown above, these clauses have been enforced in Indiana.  See Hanley, 172 Ind. App. at 336, 360 N.E.2d at 251.

In addition, contrary to the sweeping assertions of Joseph-estate, the application of these two clauses does not create a worthless Policy. Farm Bureau paid claims from this collision under other coverages. Moreover, the liability coverage and the UIM coverage, although they provided no coverage to Joseph-deceased in this collision, had purpose. They provided protection from collisions of vehicles not covered under the Policy or vehicles not driven by members of the household.

In addition, we find Joseph-estate has not proved the terms of the Policy to be ambiguous. We recognize the difficulty of following insurance contracts, but Joseph-estate has not shown any ambiguity to render the contract unenforceable.

C. Farm Bureau Is Not Estopped From Denying Coverage

Joseph-estate last argues Farm Bureau should be estopped from raising coverage defenses under the "mend-the-hold" and equitable-estoppel doctrines. Joseph-estate emphasizes the following facts: Farm Bureau did not file the declaratory judgment action until more than 31 months after the accident, 8 months after he made the policy limits demand, and 6 months after the lawsuit was filed; Farm Bureau defended Wilma's estate without making a reservation of rights; and Farm Bureau admitted through Kuster's answers to interrogatories there was coverage of the claim. Joseph-estate contends Farm Bureau, through its actions, conceded coverage and cannot now maintain there is none.

- 11 -

We first find Kuster's answer to interrogatories in the underlying wrongful-death action cannot be held against Farm Bureau. Kuster is the attorney for Wilma's estate. Although Kuster was paid by Farm Bureau, Joseph-estate has not identified anything in the record to indicate he represented Farm Bureau.

We also find it irrelevant that over 31 months had passed since the accident before Farm Bureau filed the declaratory-judgment action. A duty to defend does not arise until after the underlying lawsuit is filed. See Grinnell Mutual Reinsurance Co. v. LaForge, 369 Ill. App. 3d 688, 698, 863 N.E.2d 1132, 1140 (2006).

### 1. The "Mend-the-Hold" Doctrine

We turn to Joseph-estate's first argument: the "mend-the-hold" doctrine prohibits Farm Bureau from relying on the coverage defenses raised in the declaratory-judgment action. Under the mend-the-hold doctrine, in the insurance context, insurers may not deny a claim for one reason and then change "the reason for its denial in the midst of litigation." LaForge, 369 Ill. App. 3d at 699, 863 N.E.2d at 1140. "'"[It] is not permitted thus to amend [its] hold."'" LaForge, 369 Ill. App. 2d at 699, 863 N.E.2d at 1140, quoting Gibson v. Brown, 214 Ill. 330, 341, 73 N.E. 578, 582 (1905), quoting Ohio & Mississippi Ry. Co. v. McCarthy, 96 U.S. 258, 267-68, 24 L. Ed. 693, 696 (1877).

Other than relying on Kuster's interrogatory answer,

Joseph-estate has not identified any place in the record showing Farm Bureau denied his claim for coverage for one reason and changed the reason after litigation began. In fact, the record shows Farm Bureau had not denied Joseph-estate's claims before Joseph-estate filed the wrongful-death action. Joseph-estate made its claim under the liability coverage portion of the Policy on June 6, 2005. While making its claim, Joseph-estate maintained he needed a prompt response because the statute of limitations was about to expire. On June 15, 2005, Farm Bureau informed Joseph-estate it did not yet have an authorized response to his claim and it would take some time to get one. On July 1, 2005, the wrongful-death suit was filed.

Even if Joseph-estate could rely on Farm Bureau's provision of a defense for Wilma's estate as admitting coverage and then Farm Bureau's declaratory-judgment action as a change of position, the mend-the-hold doctrine does not apply. This court will not apply the doctrine "in the absence of detriment to the party seeking its application, unfair surprise, or arbitrariness." LaForge, 369 Ill. App. 3d at 699, 863 N.E.2d at 1141. Joseph-estate has not established, much less argued, he suffered detriment or unfair surprise at the alleged change in position. Nor has he shown any arbitrariness to justify application of the doctrine here. Further, Joseph-estate cannot claim he incurred costs of litigation as a result of the alleged

change of position, because he made his demand shortly before he filed suit and before he received word on Farm Bureau's position.

## 2. Equitable Estoppel

Joseph-estate argues the doctrine of equitable estoppel prohibits Farm Bureau from denying coverage. Joseph-estate maintains because Farm Bureau undertook defending Wilma's estate without a reservation of rights and did not seek a declaratory judgment until after the motion to dismiss in the underlying suit was denied, the doctrine prohibits Farm Bureau from denying coverage.

Farm Bureau maintains, in part, the equitable estoppel doctrine does not apply because Joseph-estate has not shown prejudice. We agree.

Joseph-estate's position focuses on an insurer's responsibilities when faced with a claim it believes is not covered by a duty to defend. In that situation, "the insurer may not simply refuse to defend the insured." Johnson v. State Farm Fire & Casualty Co., 346 Ill. App. 3d 790, 794, 806 N.E.2d 223, 226 (2004). The insurer must, instead, "either (1) defend the lawsuit under a reservation of rights or (2) seek a declaratory judgment that no coverage exists." Johnson, 346 Ill. App. 3d at 794, 806 N.E.2d at 226. We will find an insurer "estopped from raising a policy defense to coverage only if it fails to take either of these two actions" (Johnson, 346 Ill. App. 3d at 794,

- 14 -

806 N.E.2d at 226) and it "is later found to have wrongfully denied coverage" (Employers Insurance of Wausau v. Ehlco Liquidating Trust, 186 Ill. 2d 127, 150, 708 N.E.2d 1122, 1134-35 (1999)). Proof of prejudice, in these circumstances, is not required. See Wausau, 186 Ill. 2d at 157-58, 708 N.E.2d at 1138.

A different equitable estoppel applies, however, if the insurer initially undertakes the duty to defend without reserving its rights, but later reserves rights or files a declaratory-judgment action. See Wausau, 186 Ill. 2d at 158, 708 N.E.2d at 1138. In the cases where the duty to defend was undertaken but then disputed, an insurer will not be equitably estopped from denying coverage unless prejudice exists. See Maryland Casualty Co. v. Peppers, 64 Ill. 2d 187, 195-96, 355 N.E.2d 24, 28-29 (1976); American States Insurance Co. v. National Cycle, Inc., 260 Ill. App. 3d 299, 302-03, 307-08, 631 N.E.2d 1292, 1295, 1298-99 (1994); Mid-State Savings & Loan Ass'n v. Illinois Insurance Exchange, Inc., 175 Ill. App. 3d 265, 268-70, 529 N.E.2d 696, 698-99 (1988).

In this case, Joseph-estate has not shown prejudice. The duty to defend was not owed to Joseph-estate. Joseph-estate has not shown how he was prejudiced by Farm Bureau's conduct, and he has not provided any basis for the conclusion barring Farm Bureau from a valid defense would be equitable.

The only argument Joseph-estate makes for prejudice is that Wilma's estate was prejudiced because she was not allowed to

- 15 -

control her defense. Notwithstanding the problems that arise on using an adversary's alleged prejudice to trigger estoppel, case law shows courts should not conclusively presume prejudice "from the mere entry of appearance and assumption of the defense." Peppers, 64 Ill. 2d at 196, 355 N.E.2d at 29; see also Royal Globe Insurance Co. v. Tutt, 108 Ill. App. 3d 69, 71, 438 N.E.2d 943, 945 (1982). Prejudice will be found if "by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense." Peppers, 64 Ill. 2d at 196, 355 N.E.2d at 29. Prejudice must be proved "'by clear, concise, and unequivocal evidence.'" National Cycle, 260 Ill. App. 3d at 308, 631 N.E.2d at 1299, quoting Old Mutual Casualty Co. v. Clark, 53 Ill. App. 3d 274, 279, 368 N.E.2d 702, 705 (1977). Joseph-estate argues nothing more than Wilma's estate was denied the opportunity to hire counsel. This argument is insufficient.

Joseph-estate's case law on this point is distinguishable. Joseph-estate relies on Apex Mutual Insurance Co. v. Christner, 99 Ill. App. 2d 153, 240 N.E.2d 742 (1968). In Christner, however, the insured, rather than a third-party plaintiff in an underlying action, sought equitable estoppel. In addition, a motion for summary judgment against the insured was pending in the underlying lawsuit before the insurer sought a declaratory judgment and summary judgment was entered before the declaratory-judgment case was decided. See Christner, 99 Ill.

App. 2d at 158-59, 240 N.E.2d at 745-46.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

I specially concur.  I agree with the majority that Indiana law applies.  The Illinois Insurance Code permits out-of-state insurance companies to issue policies in conformance with the laws of their respective states:

> "The policies of a company, not organized under the laws of this State, may contain any provision which the law of the state or country under which the company is organized prescribes shall be in such policies when issued in this State, and the policies of such insurance company organized under the laws of this State may, when issued or delivered in any other state or country, contain any provisions required by the laws of the state or country in which the same are issued, anything in this Code to the contrary notwithstanding."  215 ILCS 5/443 (West 2006).

However, I write separately to note the contradiction within the Insurance Code.  All drivers of vehicles in Illinois must possess mandatory minimum UIM and underinsured (UDIM) insurance but vehicles registered in another state need only possess insurance in conformance with the other state's laws.  Illinois public policy mandates $20,000/$40,000 limits on UIM and

- 18 -

UDIM coverage. Simply put, drivers in Illinois, whether residents or not, are required to possess those insurance limits to drive upon the roads in Illinois. Absolute liability lies for failure to possess those insurance limits:

> "Section 3-707 is the penalty provision for violation of the mandatory insurance provisions of the Code. See 625 ILCS 5/7-601, 7-602 (West 2000). The purpose to be achieved, then, is enforcement of the mandatory insurance requirement, which was instituted for the protection of the public (see State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 285 Ill. App. 3d 115, 120-21[, 674 N.E.2d 52, 55-56] (1996)), and to promote public safety and financial responsibility (see 625 ILCS 5/7-100 through 7-708 (West 2000) ('Illinois Safety and Family Financial Responsibility Law')). In the legislature's words, 'the State has a compelling interest in ensuring that drivers *** demonstrate financial responsibility, including family financial responsibility, *** in order to safely own and operate a motor vehicle.' See 625 ILCS 5/7-701 (West 2000). Thus, the legislature,

in its wisdom, has determined that important public interests are served by eliminating uninsured vehicles from the roads of this state.  It makes sense, then, that they should place an absolute obligation on the operators, who are directly responsible for placing a motor vehicle on the road, to ascertain the insured status of the motor vehicle or suffer the consequences.  Thus, section 3-707, which defines the penalty for a violation of the mandatory insurance requirements set forth in sections 7-601 of the Code, is appropriately read as imposing absolute liability and expressing the public policy of Illinois."  People v. O'Brien, 197 Ill. 2d 88, 99-100, 754 N.E.2d 327, 334 (2001).

Further, Illinois law, contrary to Indiana law, mandates those minimum limits on the vehicle regardless of the operator.  State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co., 226 Ill. 2d 395, 411, 875 N.E.2d 1096, 1105 (2007).  See also this recently enacted provision of the Insurance Code:

"Any policy of private passenger automobile insurance must provide the same

limits of bodily injury liability, property damage liability, [UIM] and [UDIM] bodily injury, and medical payments coverage to all persons insured under that policy, whether or not an insured person is a named insured or permissive user under the policy. If the policy insures more than one private passenger automobile, the limits available to the permissive user shall be the limits associated with the vehicle used by the permissive user when the loss occurs." Pub. Act 95-395, §5, eff. January 1, 2008 (adding 215 ILCS 5/143.13a) (2007 Ill. Legis. Serv. 4757 (West)).

Clearly, Wilma Frye, the deceased, should have been insured here in compliance with the mandatory insurance public-policy requirement of Illinois. But, in effect, the majority permits an uninsured vehicle to be driven upon the roads of this State, contrary to the public policy of our State. Both Wilma Frye and her husband, Joseph Frye, were in violation of that public policy and the statutory mandate of such sections as section 7-601, for example, when driving and permitting the operation of their vehicle in Illinois. Both could have been prosecuted for that violation under our absolute-liability statute governing drivers, even though their Indiana insurance

company bore no responsibility to comply with the mandatory insurance laws of Illinois.