# Illinois Official Reports

## Appellate Court

---

**Illinois Insurance Guaranty Fund v. Nwidor, 2018 IL App (1st) 171378**

---

| | |
|---|---|
| Appellate Court Caption | THE ILLINOIS INSURANCE GUARANTY FUND, Plaintiff-Appellee, v. ISRAEL P. NWIDOR, Individually; PHILLIP CARRINGTON, as Guardian of the Estate of James Carrington, a Disabled Person; and CHICAGO CARRIAGE CAB CORPORATION, d/b/a Chicago Taxi Association, Inc., an Illinois Corporation, Defendants (Chicago Carriage Cab Corporation, Defendant-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-17-1378 |
| Filed | May 23, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-CH-008848; the Hon. Sanjay Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey J. Scolaro and Lisa M. Roccanova, of Daley Mohan Groble, P.C., of Chicago, for appellant.<br><br>Bryan G. Schumann, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellee. |

PRESIDING JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Howse and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, the Illinois Insurance Guaranty Fund (IIGF), brought a declaratory judgment action in the circuit court of Cook County against defendants, which included the Chicago Carriage Cab Corporation, d/b/a Chicago Taxi Association, Inc. (Chicago Cab). IIGF sought a determination of Chicago Cab's insurance coverage in an underlying lawsuit. Finding that Chicago Cab was not covered, the trial court granted summary judgment in favor of IIGF. On appeal, Chicago Cab contends (1) waiver or estoppel barred IIGF from asserting lack of coverage, (2) the trial court erred in granting summary judgment in favor of IIGF, and (3) the trial court abused its discretion in denying Chicago Cab's motion to reconsider. We affirm.

¶ 2                                    I. BACKGROUND
¶ 3                            A. Underlying Carrington Action
¶ 4    On October 5, 2011, Israel P. Nwidor, a Chicago Cab employee, was driving a 2007 Ford Crown Victoria taxi, owned by Chicago Cab. The taxi collided with a motorcycle being operated by James Carrington. In April 2012, Phillip Carrington, as guardian of the estate of James, brought a personal injury action against Chicago Cab and Nwidor. Chicago Cab owned a commercial automobile liability insurance policy, No. 11UCC2060, issued by the Ullico Casualty Company (Ullico). Chicago Cab tendered its defense to Ullico, which retained defense counsel. An appearance on behalf of Chicago Cab was filed in August 2012. In January 2013, Carrington filed the instant amended complaint against Nwidor, Chicago Cab, and related corporate entities. Carrington alleged that Nwidor and Chicago Cab negligently owned, operated, and maintained the subject taxi, which proximately resulted in James's severe and permanent injuries.

¶ 5    On May 30, 2013, Ullico went into liquidation. In a letter dated June 7, 2013, IIGF notified Chicago Cab of the liquidation. The letter informed Chicago Cab that IIGF would assume responsibility for Ullico's obligations to its Illinois policyholders and claimants, subject to the limitations and conditions of the Illinois Insurance Guaranty Fund, codified as article XXXIV of the Illinois Insurance Code (215 ILCS 5/532 *et seq.* (West 2014)). The letter advised Chicago Cab that it had to satisfy certain prerequisites before IIGF could "proceed to investigate, adjust, compromise, settle and pay *covered claims* as provided for, and in accordance with our governing statutory requirements." (Emphasis added.) The letter also included the following:

> "IIGF specifically asserts and maintains a reservation of rights related to any payments it may make in respect to your company. IIGF also asserts and maintains an absolute reservation of rights in respect to any policy related issues which may be discovered or disclosed. IIGF reserves the right to seek reimbursement from you for any and all payments *** that IIGF may make in respect of your company if, because of *** any

pertinent statutory or policy limitation or condition, it is discovered or decided that the relevant claims were not 'covered claims.' "

In a June 24, 2013, letter, IIGF requested information from Chicago Cab and repeated the above-quoted language.

¶ 6     In a third letter, dated September 26, 2013, IIGF informed Chicago Cab that the Ullico liquidator had provided IIGF with "initial computerized data references, and in some but not all instances, file materials as well," but that it was still "missing critical information necessary for us to process claims." The letter also noted as follows:

"In addition to any prior reservation of rights issued by Ullico Insurance Company, IIGF is conducting the handling of the above referenced matter under a full and complete reservation of rights under the terms and conditions of the Ullico insurance policy. *** Nothing in this letter should be viewed as a waiver of any rights or defenses IIGF may have under the Illinois Insurance Code, under the pertinent insurance policies or otherwise which rights and defenses are hereby reserved."

¶ 7     In a fourth letter, dated May 6, 2014, IIGF informed Chicago Cab that IIGF had obtained the Ullico policy, which included "endorsement number 11," in effect at the time of the accident. Generally, the policy provided coverage only for covered automobiles, and endorsement No. 11 deleted coverage for the subject taxi, vehicle identification number (VIN) 2FAFP71W67X124521. The letter explained: "since it appears that the policy affords no coverage for the deleted auto due to endorsement number 11 and the general policy provisions," IIGF "fully reserves all rights under the policy and Illinois law *** to deny any obligation to pay for any defense or indemnity" on behalf of Chicago Cab or Nwidor. The letter further explained that the IIGF provisions of the Insurance Code obligate IIGF to pay only a "covered claim," which refers to a loss within the coverage of a liability insurance policy, and any loss outside of such coverage is not a covered claim. For these reasons, and for any additional reasons as the investigation continued, IIGF would continue to pay for the defense of Chicago Cab and Nwidor but under a reservation of rights, including the right to file a declaratory judgment action. The underlying Carrington action was and remains stayed.

¶ 8     B. Instant Declaratory Judgment Action

¶ 9     On May 23, 2014, IIGF filed the instant complaint for declaratory relief, with the Ullico policy attached. The Ullico policy shows coverage for the subject taxi bearing City of Chicago Taxicab Medallion No. 2975. Endorsement No. 11 shows that on September 22, 2011, that vehicle was removed from coverage and replaced with a different vehicle (VIN 1FMCU4K3XCKA59559) bearing the same medallion. Endorsement No. 11 had an effective date of September 30, 2011. IIGF alleged that the subject taxi was deleted from coverage under the Ullico policy prior to the October 5, 2011, accident. IIGF further alleged that since the Ullico policy provides no liability coverage for the subject taxi, there consequently could be no "covered claim" as defined by the IIGF provisions in the Insurance Code. 215 ILCS 5/534.3(a) (West 2014). Accordingly, IIGF sought a declaration that it did not have a duty to defend or indemnify Chicago Cab or Nwidor in the underlying action, and that IIGF was entitled to reimbursement from Chicago Cab for defense costs.

¶ 10     Chicago Cab filed an answer and three affirmative defenses. The answer denied the complaint's salient allegations. In its first affirmative defense, Chicago Cab asserted that the subject taxi was still covered under the Ullico policy on the day of the underlying accident.

Chicago Cab alleged as follows. Ullico insured Chicago Cab's fleet of taxis, including the subject taxi affixed with medallion No. 2975. Without mentioning endorsement No. 11, Chicago Cab alleged that, based on City of Chicago regulatory custom and practice, the City of Chicago taxicab medallion license card (Hard Card) was not issued to the replacement vehicle until October 7, 2011, two days after the underlying accident. Therefore, according to Chicago Cab, the subject taxi was still covered at the time of the accident. Consequently, Chicago Cab presented a covered claim.

¶ 11    In its second affirmative defense, Chicago Cab posited that 25 months elapsed from the April 2012 filing of the original complaint in the underlying action to May 6, 2014, when IIGF issued a reservation of rights letter. Chicago Cab alleged that Ullico and IIGF waived a lack of coverage by waiting 25 months before IIGF issued a reservation of rights letter or filed a declaratory judgment action of any kind. In its third affirmative defense, Chicago Cab alleged that it detrimentally relied on the actions of Ullico and IIGF and, consequently, IIGF and Ullico should be estopped from asserting a lack of coverage.

¶ 12    In August 2016, IIGF filed a motion for summary judgment, in which it argued that, as a matter of law, insurance coverage for the subject taxi was removed on September 30, 2011, the effective date of endorsement No. 11 of the Ullico policy. Therefore, according to IIGF, the subject taxi was not covered at the time of the October 5, 2011, underlying accident. IIGF also argued that it did not waive denial of coverage or is estopped from asserting lack of coverage.

¶ 13    In its response, Chicago Cab asserted that "[t]he policy and endorsement language only tells a part of the story, and clearly does not reflect the true rights, duties, and obligations contemplated by the Contracting Parties." Chicago Cab contended that IIGF ignored the regulatory procedures, past negotiations, business practices, and mutual contractual intent of the contracting parties and of the taxi insurance industry in general. Chicago Cab argued that there were "myriad issues of fact as to how and when" insurance coverage was transferred from the subject taxi to the replacement vehicle. According to Chicago Cab, these material issues of fact precluded summary judgment. Chicago Cab also argued that its affirmative defenses of waiver and estoppel raise questions of material fact that preclude summary judgment.

¶ 14    On January 5, 2017, at the close of a hearing, the trial court granted IIGF's motion for summary judgment. Chicago Cab filed a motion to reconsider, which the trial court denied. Chicago Cab timely appeals. Additional pertinent background will be discussed in the context of our analysis of the issues.

¶ 15                                      II. ANALYSIS

¶ 16    This matter is before us on the grant of summary judgment in favor of IIGF. Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). A trial court's entry of summary judgment and the construction of an insurance policy are both reviewed *de novo*. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 370-71 (2007).

## A. Waiver and Estoppel

¶ 18    In the trial court, Chicago Cab directed this contention at both Ullico and IIGF. Chicago Cab contended that the 25-month period between the filing of the original complaint and IIGF's fourth reservation of rights letter constituted waiver of and estoppel from asserting a lack of coverage under the policy. However, before this court, Chicago Cab directs this contention solely at IIGF. Chicago Cab now argues that, based on the 11-month period between Ullico's liquidation and IIGF's fourth reservation of rights letter, (1) IIGF has waived a lack of policy coverage and (2) IIGF should be estopped from asserting a lack of coverage.

¶ 19    At the outset, we note IIGF's contention that there was no delay on its part at all. According to IIGF, it issued its first reservation of rights letter to Chicago Cab on June 7, 2013, which was only within one week of Ullico's liquidation. IIGF argues that it "properly reserved all of its rights from the very beginning while it continued to investigate the matter."

¶ 20    This contention lacks merit. A reservation of rights must adequately inform the insured of the rights which the insurer intends to reserve. "Accordingly, bare notice of a reservation of rights is insufficient; the notice must make specific reference to the policy defense which ultimately may be asserted ***." *Royal Insurance Co. v. Process Design Associates, Inc.*, 221 Ill. App. 3d 966, 973 (1991). In the case at bar, IIGF's first three reservations of rights letters each contained a bare, boilerplate declaration of an "absolute" or a "full and complete" reservation of rights "in respect to any policy related issues which may be discovered or disclosed." It was not until IIGF's fourth reservation of rights letter, dated May 6, 2014, that IIGF informed Chicago Cab of the coverage issue for the subject taxi. Therefore, we will analyze Chicago Cab's contentions based on the alleged 11-month delay.

¶ 21    In the context of insurance law, the doctrines of "waiver" and "estoppel" are closely akin and may often coexist. However, waiver and estoppel are two separate and distinct doctrines. *Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.*, 69 Ill. App. 3d 422, 427-28 (1979). Waiver consists of an express or implied voluntary and intentional relinquishment of a known right. In contrast, estoppel refers to an abatement, by operation of law, of the insurer's rights where it would be inequitable to permit their assertion. *National Discount Shoes, Inc. v. Royal Globe Insurance Co.*, 99 Ill. App. 3d 54, 59 (1981). Normally, waiver and estoppel are questions for the trier of fact. However, where there is no dispute as to the material facts and only one inference can be drawn therefrom, summary judgment is appropriate. See, *e.g.*, *Aetna Casualty & Surety Co. v. Oak Park Trust & Savings Bank*, 168 Ill. App. 3d 1000, 1004 (1988); *Florsheim v. Travelers Indemnity Co.*, 75 Ill. App. 3d 298, 307 (1979).

¶ 22    Absent a reservation of rights, an insurer waives all questions of policy coverage when it assumes an insured's defense and " 'recognizes the continued validity of the policy.' " *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 306 (1994) (quoting *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d 615, 620 (1974)). However, an insurer cannot assert a policy defense until it is aware of the facts giving rise to that defense, and an insurer will not be found to have waived rights of which it was unaware. *Id.* at 307. Moreover, an insurer who wishes to reserve its rights under a policy must notify the insured without delay or with reasonable promptness. A long delay without explanation in asserting a policy defense is an element in determining the reasonableness of an insurer's conduct. However, such a delay alone is normally not enough to constitute a waiver. In determining whether a "delay" is reasonable, it is implicit that some part of the time, reasonable in relation to the status of the pending litigation, must be allowed to the insurer to evaluate its position and

determine what route it will follow. *Id.* at 306. Since waiver is based on the unilateral conduct of the insurer, prejudicial reliance by the insured is not required. *Id.*; *Salloum Foods*, 69 Ill. App. 3d at 428-29.

¶ 23 Applying these principles to the case at bar, we conclude that IIGF did not waive denial of coverage under the policy. In its June 7, 2013, letter, IIGF notified Chicago Cab that it would assume responsibility for Ullico's obligations. At that time, however, IIGF obviously was unaware of the facts pertaining to policy coverage. Consequently an intention to waive does not follow. Further, the entire 11-month period cannot be considered a "delay." In its September 26, 2013, letter, IIGF informed Chicago Cab that it still lacked necessary information to process the claim. It was not until May 6, 2014, that IIGF stated that the liquidator had "[r]ecently" provided it with endorsement No. 11. Thus, in light of the factual posture of this case, we do not believe that the approximate seven months between IIGF's September 26, 2013, letter and its May 6, 2014, reservation of rights letter was an unreasonable delay. We fail to see how IIGF's conduct constituted an intentional relinquishment of a known right.

¶ 24 Turning to estoppel, Chicago Cab alleged in its third affirmative defense that it "relied on [IIGF's] representation that it would be defended and indemnified and, therefore, did not take an active part in the defense of the Carrington Action." Chicago Cab further alleged that it was prejudiced by the inability "to be involved in decisions related to the defense of the Carrington Action," and "to monitor the potential economic impact that the Carrington Action might have." Chicago Cab alleged that IIGF's actions also prejudiced its "potential ability to settle the Carrington Action."

¶ 25 Generally, where a complaint against the insured alleges facts within or potentially within the coverage of the insurance policy and when the insurer takes the position that the policy does not cover the complaint, the insurer must (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371 (1999). In these circumstances, proof of prejudice is not required. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 157-58 (1999).

¶ 26 However, "a different form of equitable estoppel *** arises once an insurer actually assumes an insured's defense without reserving its rights." *Id.* at 158 (collecting cases). Where, as in this case, the insurer initially undertakes the duty to defend but later reserves rights or files a declaratory judgment action, the insurer will not be estopped from asserting lack of coverage unless prejudice exists. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 195 (1976); *United Farm Family Mutual Insurance Co. v. Frye*, 381 Ill. App. 3d 960, 969 (2008). Typically, the insured asserts prejudice on the ground that it surrendered the right to control its defense and completely relied for its entire defense upon the insurer. *American States Insurance Co.*, 260 Ill. App. 3d at 308. However, "[p]rejudice will not be conclusively presumed from the mere entry of appearance and assumption of the defense." *Peppers*, 64 Ill. 2d at 196. The insured has the burden of establishing prejudicial reliance by clear, concise, and unequivocal evidence. *Frye*, 381 Ill. App. 3d at 369-70; *American States Insurance Co.*, 260 Ill. App. 3d at 308.

¶ 27 In the case at bar, we fail to see how Chicago Cab was prejudiced by IIGF's representation and assertion of lack of coverage. Chicago Cab does not complain that IIGF's representation

was defective. Also, Chicago Cab has not offered any evidence to show how it was injured by IIGF's alleged delay in reserving its rights. Indeed, the underlying action was and remains stayed. There is nothing in the record other than Chicago Cab's bare assertion that it was prejudiced by surrendering its defense to IIGF. This is merely a legal conclusion and not a statement of fact. We conclude that Chicago Cab failed to establish prejudice. See *Mid-State Savings & Loan Ass'n v. Illinois Exchange, Inc.*, 175 Ill. App. 3d 265, 272 (1988); *American States Insurance Co.*, 260 Ill. App. 3d at 310; *Old Mutual Casualty Co. v. Clark*, 53 Ill. App. 3d 274, 279 (1977). We hold that IIGF is not estopped from asserting lack of policy coverage.

¶ 28                                B. "Covered Claim"

¶ 29        We agree with Chicago Cab that the crux of this case turns on the date that coverage under the Ullico policy was transferred from the subject taxi to the replacement vehicle. Chicago Cab contends that coverage was transferred on October 7, 2011, and, therefore, the subject taxi was still covered under the policy at the time of the October 5, 2011, accident. IIGF contends that coverage was transferred on September 30, 2011, and, therefore, the subject taxi was not covered at the time of the accident. At the least, according to Chicago Cab, a genuine issue of material fact exists as to this issue.

¶ 30        When construing an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Rich*, 226 Ill. 2d at 371; *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). "An insurance policy, like any contract, is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). The court must take into account the type of insurance provided, the nature of the risks involved, the overall purpose of the contract (*Rich*, 226 Ill. 2d at 371; *Crum & Forster*, 156 Ill. 2d at 391), and the particular factual setting in which the policy was issued. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006). If the words in the policy are unambiguous, they must be given their plain and ordinary meaning, and the policy will be applied as written, unless it contravenes public policy. *Rich*, 226 Ill. 2d at 371. A policy term is not considered ambiguous "merely because the parties can suggest creative possibilities for its meaning. Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Nicor*, 223 Ill. 2d at 417; see *Young v. Allstate Insurance Co.*, 351 Ill. App. 3d 151, 157-58 (2004).

¶ 31        In the case at bar, the Ullico policy was in effect from January 1, 2011, to January 1, 2012. Endorsement No. 1, dated January 1, 2011, lists the 813 taxis covered under the policy. Each taxi is identified by medallion number, year, make, and VIN. Each month thereafter, an endorsement labelled "Policy Change" listed, by medallion number, taxis identified by VIN that were removed from coverage and replaced with different vehicles. According to IIGF, endorsement No. 11 clearly shows that on September 22, 2011, coverage for the subject taxi was transferred to the replacement vehicle. Further, the "change effective" date was September 30, 2011.

¶ 32        However, Chicago Cab contends that "IIGF's position ignores the understanding" between Chicago Cab and Ullico. Chicago Cab points to taxi rules promulgated by the City of Chicago Department of Business Affairs and Consumer Protection (BACP). Chicago Cab argues that it could not operate the replacement vehicle until it completed the change of equipment (COE)

administrative and inspection process, and was issued a Hard Card to be placed in the vehicle. It was only after the issuance of the Hard Card could Chicago Cab physically remove the metal medallion from the subject taxi and bolt it on the replacement vehicle. According to Chicago Cab, endorsement No. 11 "was processed 'early' (*i.e.*, September 22, 2011)" so that Chicago Cab "would have it in hand to submit to the BACP prior to the October 7, 2011 COE inspection. Coverage of the [subject taxi] continued until it was replaced on October 7, 2011—the date when the BACP issued the 'Hard Card' for the [replacement vehicle]."

¶ 33 We cannot accept this argument. It is quite established that evidence of custom and usage is only admissible to explain uncertain or ambiguous terms of a contract. When contract terms are clear, those terms alone determine the obligations of the parties. *Gray v. Mundelein College*, 296 Ill. App. 3d 795, 805 (1998); *Bielecki v. Painting Plus, Inc.*, 264 Ill. App. 3d 344, 358 (1994). "Usage or custom is admissible to explain or make clear what a contract means but not to contradict a meaning obvious on the face of the instrument." *Hufford v. National Retailer-Owned Grocers, Inc.*, 16 Ill. App. 2d 1, 7-8 (1957). One will not be permitted to prove a custom or usage that would effectively add to an express agreement a condition or limitation that is inconsistent with the agreement itself. *Ambarann Corp. v. Old Ben Coal Corp.*, 395 Ill. 154, 164 (1946).

¶ 34 In endorsement No. 11, Ullico and Chicago Cab plainly and unambiguously agreed that coverage for medallion No. 2975 would transfer on September 22, 2011, effective September 30, 2011. Further, there is no reason to ignore the integration provision in the policy, which provides that the policy contains "all of the agreements" between Ullico and Chicago Cab "concerning the insurance afforded," and that the "policy's terms can be amended or waived only by endorsement issued by [Ullico] and made a part of this policy." See *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 464 (1999) (stating that "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence"). Chicago Cab's argument would render meaningless the policy's monthly endorsements that identify when coverage begins and ends for any of the swapped taxis. "[A] court will not rewrite a contract to suit one of the parties, but will enforce the terms as written. [Citation.] There is a strong presumption against provisions that easily could have been included in the contract but were not." *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 925 (1990). Chicago Cab's invocation of custom and usage is unavailing.

¶ 35 We note that Chicago Cab raised an alternative contention in its response to IIGF's motion for summary judgment: that "a mutual mistake of fact" occurred when endorsement No. 11 was written. At the hearing on IIGF's motion for summary judgment, the trial court found: "There is in my view no legal or factual support for the argument that there was a mutual mistake of fact." Before this court, Chicago Cab asks for reformation of endorsement No. 11 "to reflect the true intent of the contracting parties."

¶ 36 The party seeking reformation of a written instrument must establish that there had been a meeting of the minds resulting in an actual agreement between the parties; however, when the agreement was reduced to writing, some agreed-upon provision was omitted or one not agreed upon was inserted, either through a mutual mistake or through mistake of one party and fraud by another. *Great American Federal Savings & Loan Ass'n v. Grivas*, 137 Ill. App. 3d 267, 274 (1985); *Sheldon v. Colonial Carbon Co.*, 116 Ill. App. 3d 797, 800 (1983). " '[T]he action is to so change the instrument as written as to conform it to the contract agreed upon, by

inserting the provisions omitted or striking out the one inserted by mutual mistake.' " *Suburban Bank of Hoffman-Schaumburg v. Bousis*, 144 Ill. 2d 51, 58-59 (1991) (quoting *Harley v. Magnolia Petroleum Co.*, 378 Ill. 19, 28 (1941)). There is a presumption that a written instrument conforms to the intention of the parties thereto. Therefore, in an action for reformation, the proponent's burden of proof is clear and convincing evidence. *Bousis*, 144 Ill. 2d at 59; *Grivas*, 137 Ill. App. 3d at 274; *Sheldon*, 116 Ill. App. 3d at 800.

¶ 37        Chicago Cab essentially argues that the "real" agreement between it and Ullico provided that the effective coverage transfer date for replaced taxis was not the effective date plainly identified on the monthly endorsements but rather was the date on which BACP chose to issue a Hard Card for any particular taxi. The trial court rejected this contention, as do we. Chicago Cab subsequently proffered affidavit testimony, which we discuss below, that the Hard Card date of issuance customarily governs the date of coverage. However, this affidavit testimony does not establish that this alleged custom and practice was reduced to a writing that would constitute a prior contract. We uphold the trial court's grant of summary judgment in favor of IIGF.

¶ 38                                    C. Motion to Reconsider

¶ 39        Chicago Cab filed a motion to reconsider based on newly discovered evidence. The trial court denied the motion, and Chicago Cab assigns error. The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law, or errors in the trial court's previous application of existing law. Where the motion to reconsider is based on new evidence, facts, or legal theories not presented in the prior proceedings, our standard of review is abuse of discretion. *Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶¶ 79-80; *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 330-31 (2008).

¶ 40        Chicago Cab attached to its motion to reconsider affidavits from two taxi associations and an insurer of Chicagoland taxis. In its motion, Chicago Cab asserted that the affidavits "testify to the custom and practice of the hard card governing the date of coverage for taxis in Chicago." Before this court, Chicago Cab contends that each affiant "unequivocally swears that custom and practice in the industry is that the 'hard card' date of issuance dictates the policy change."

¶ 41        We must first determine whether this information qualifies as newly discovered evidence. In the context of this case, newly discovered evidence is evidence that was not available prior to the hearing on the motion for summary judgment. A trial court should not allow a litigant to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. *Horlacher*, 2017 IL App (1st) 162712, ¶¶ 82, 84; *Compton*, 382 Ill. App. 3d at 331; *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001).

¶ 42        This is precisely what Chicago Cab attempts to do here. Before this court, Chicago Cab asserts that the affiants "were not willing to be involved in the litigation, as they believed the trial court would uphold the custom and practice of the taxicab industry that [Chicago Cab] had followed. It was only after the adverse summary judgment ruling that [Chicago Cab] could obtain these affidavits." Thus, by Chicago Cab's own admission, its proffered affidavits are not "newly discovered evidence." We cannot say that the trial court abused its discretion in denying Chicago Cab's motion to reconsider.

¶ 43                                  III. CONCLUSION
¶ 44            For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 45            Affirmed.