2021 IL App (1st) 190658-U

SECOND DIVISION
November 23, 2021

No. 1-19-0658

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| APOLLO CASUALTY COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee and | ) | Cook County. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 12 CH 7395 |
| | ) | |
| CHANNON JORDAN, CHRISTINE JAMES, and | ) | |
| LINCOLN INSURANCE AGENCY, INC. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| (Channon Jordan, Defendant and Counterplaintiff- | ) | |
| Appellant and Cross-Appellee; | ) | Honorable |
| Lincoln Insurance Agency, Inc., Defendant- | ) | Michael T. Mullen, |
| Cross-Appellee). | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed.  We affirm the trial court's declaratory judgment finding no policy coverage on the automobile insurance policy in favor of the insurer; the insured was not driving a vehicle listed as insured under the policy and failed to effectuate a change of vehicle in accordance with the terms of the policy; the insurer was not estopped from pursuing a declaratory judgment with respect to coverage where it properly defended the insured in the underlying personal injury action under a reservation of rights and also filed an action for declaratory judgment.

¶ 2     The issue presented in this case is whether a vehicle owner's verbal notice to change vehicles insured under an auto insurance policy given to Lincoln Insurance Agency instead of the Insurer was effective as notice to the insurer. For several years Channon Jordan, defendant, acquired insurance for her vehicles through Lincoln Insurance Agency, who would secure coverage for Jordan with various companies. In 2009, Apollo Casualty Company, through Lincoln, issued a policy insuring Jordan's 1991 Cadillac. In 2010, Jordan telephoned Lincoln Insurance Agency and requested that Lincoln notify Apollo that she wanted to substitute the Cadillac listed under the policy for her new vehicle, a Dodge Stratus. Jordan's policy required any vehicle change notices to be made in writing directly to the insurer and became effective only with the issuance of a written endorsement. Lincoln did not communicate this request to Apollo until after Jordan had an accident in the new vehicle.

¶ 3     Christine Jones, plaintiff, was a passenger in the new vehicle owned and driven by Jordan when Jordan lost control of the vehicle and crashed. Jones filed a complaint against Jordan seeking damages for the injuries she suffered in the accident. Apollo notified Jordan that it was defending the James Lawsuit under a reservation of rights, and Apollo also filed the complaint in this case seeking a declaration that Apollo has no obligation to provide insurance coverage for the defendant for the accident because it never received the request to change vehicles and argued the vehicle involved in the accident was not insured under the policy. Jordan filed a counterclaim for declaratory relief seeking a finding of coverage on the theory that an agency relationship existed between the insurer and the insured's broker such that the notice of vehicle change to the broker should be imputed to the insurer.

¶ 4     The trial court determined there was no automotive insurance coverage for the insured's automobile accident because at the time of the accident the insured was driving a vehicle not

listed on the policy. In addition to finding no coverage, the trial court denied the insurer's request for damages against the broker. Thereafter, the insurer moved pursuant to Rule 137 for sanctions against the insured with respect to her counterclaim based on an alleged agency relationship between the broker and insurer which was denied.

¶ 5    The insured filed an appeal arguing the trial court erred in finding the broker was not an agent of the insurer for purposes of receiving the change of vehicle request made by the insured. Alternatively, the insured argues the trial court erred in not finding the insurer waived or was estopped from pursuing a declaratory judgment of no coverage on a basis different than that set forth in its reservation of rights letters to the insured. The insurer filed a cross-appeal arguing the trial court erred in (a) not finding the insured's broker guilty of negligent misrepresentation; (b) awarding the insurer attorney fees under Rule 219; and (c) denying insurer's motion for Rule 137 sanctions. For the reasons set forth below, we affirm the trial court's judgment.

¶ 6                                    BACKGROUND

¶ 7                         Channon Jordan's Insurance Policy

¶ 8    In 2009, Channon Jordan (Jordan), contacted Lincoln Insurance Agency, Inc. (Lincoln), by telephone to transfer her automobile insurance coverage to her newly acquired 1991 Cadillac Deville ('91 Cadillac). Jordan, who had been a customer of Lincoln since 2004, used Lincoln to secure insurance coverage for her previous six vehicles through various providers. Jordan executed a power of attorney authorizing Lincoln to act on her behalf in procuring, renewing, or amending insurance in accordance with her requests. Lincoln, thereafter, placed insurance coverage on Jordan's '91 Cadillac with the insurer, Apollo Casualty Company (Apollo).

¶ 9    At all relevant times, Apollo and Lincoln had a producer agreement in effect. The agreement provided in part:

"1. *** [Apollo] grants authority to the Producer [Lincoln] for only the State of Illinois to solicit and submit applications for the classes of insurance for which a commission is specified in the Schedule. To collect, receive and receipt for premiums on insurance tendered by [Lincoln] and accepted by [Apollo] and to retain out of premiums so collected, commissions on business so placed with [Apollo], at rates from time to time agreed upon between [Apollo] and [Lincoln].

* * * *

3. [Apollo] reserves the right to decline or reject any risk or to discontinue any plan or form of insurance upon notice to [Lincoln].

4. [Apollo] shall have no right to control over [Lincoln] as to time, means, or manner of [Lincoln's] conduct of his business within the authority herein granted and nothing herein is intended or shall be deemed to constitute [Lincoln] an employee of [Apollo]."

Nothing in the producer agreement gave Lincoln authority to accept and effectuate a vehicle change request on Apollo's behalf or to act as Apollo's general-purpose agent.

¶ 10     In response to Lincoln's application, Apollo issued Jordan a liability only policy effective September 17, 2009 and expiring September 17, 2010 ('09 Policy). Prior to this policy, Lincoln had never secured automobile insurance for Jordan through Apollo.

¶ 11     The '09 Policy's "Automobile Declaration Page" listed Apollo Casualty Company at the top and referenced Lincoln as the policy producer. The policy contract listed Jordan as the insured and sole driver of the insured '91 Cadillac and was incorporated into the contract titled "Apollo Casualty Company Des Plaines, IL Personal Automobile Insurance Policy" on which Apollo's contact information was also stated on the cover page.

¶ 12    On May 26, 2010, Jordan telephoned Lincoln and requested a vehicle change on Jordan's '09 Policy from the '91 Cadillac to a newly purchased 1998 Dodge Stratus ('98 Dodge). Lincoln did not notify Apollo of Jordan's vehicle change request and Jordan never contacted Apollo directly to request the vehicle change on her Apollo policy. Having received no vehicle change request, Jordan's '09 Policy remained unchanged by Apollo.

¶ 13    On September 16, 2010, Apollo received a renewal request from Lincoln to renew "AS IS" Jordan's '09 Policy scheduled to expire on its terms the following day. In accordance with the request, Apollo issued an insurance policy to Jordan listing the '91 Cadillac as the only insured vehicle, effective September 17, 2010 through September 17, 2011 (2010 Policy). That same month, Jordan received the 2010 Policy documents including her insurance card. As with Jordan's 2009 Policy contract, the "Automobile Declarations Page" had Apollo's name at the top of the form and listed Lincoln as the producer. The '91 Cadillac was listed as the insured vehicle and Jordan the sole driver. The 2010 Policy contract was entitled "Apollo Casualty Company Des Plaines, IL Personal Automobile Insurance Policy" and incorporated the declarations page. As with the '09 Policy contract, the '10 Policy contract's cover page listed Apollo's name, address and phone number and the following statement:

> "**PLEASE READ YOUR POLICY**
>
> **NOTICE –** This policy has been issued in reliance on the information in your Application. If there is incorrect or missing information on the Declarations Page, immediately contact the Company." (Emphasis in original.)

¶ 14    Centered at the top of Jordan's '10 Policy insurance card just under "Illinois Insurance Identification Card" appeared "Apollo Casualty Company[.]" The card further listed Jordan as the insured and the '91 Cadillac as the insured vehicle. It also stated,

"If you lose this card, if it contains any errors, if you change your address or vehicle, or if you have any questions about your policy contact your agent:

*** Lincoln Insurance Agency 312-666-8800[.]"

Apollo did not receive notice of any errors on the '10 Policy insurance card or declarations page issued with the '10 Policy.

¶ 15 The terms of both Jordan's 2009 and 2010 Policy contracts required any changes to the insured vehicle to be made to Apollo in writing and further specified that no change would become effective until the issuance of an endorsement signed by an Apollo representative.

¶ 16 Both Jordan's '09 and '10 Policies set out the procedure by which a vehicle change on the policy was to be made,

"2. Premium. If the named insured [Jordan] disposes of or replaces a private passenger *** automobile, [s]he shall inform [Apollo] *in writing* within 30 days of such change.

* * * *

15. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this policy or stop [Apollo] from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, *except by endorsement issued to form a part of this policy, signed by a duly authorized representative of [Apollo]*." (Emphases added.)

¶ 17 The Underlying Accident, Personal Injury Action, and Declaratory Actions

¶ 18 On July 2, 2011, Jordan was driving the '98 Dodge when she hit a viaduct injuring her passenger, Christine James (James). Days after the accident, Lincoln requested that Apollo

delete the 1991 Cadillac from Jordan's 2010 Policy and replace it with her 1998 Dodge. This change was made by Apollo and became effective July 6, 2011. Lincoln subsequently requested that this change be made retroactive to the date of Jordan's accident. Apollo declined to accommodate Lincoln's request to make the change retroactive to the date of the accident.

¶ 19      Apollo denied coverage for the accident on the ground that the 1998 Dodge was not listed on the 2010 Policy and was not otherwise covered pursuant to the 2010 Policy contract's terms. However, Apollo retained attorneys to defend Jordan in James' personal injury case under a reservation of rights in both James' original case and the refiled case. Jordan received correspondence from Apollo advising her of the reservation of rights in both cases which stated:

> "We are making this *Reservation of Rights* for the following reason:
>
> []**The 1998 Dodge Stratus was not a listed vehicle on your policy at the time of loss. Additionally, the 1998 Dodge Stratus was not added to your policy within 30 days of purchase.**
>
> Without waiving of its rights and defenses, including the right to recoup any defense cost paid in the event that it is determined that [Apollo] does not owe the insured a defense in this matter, [Apollo] agrees to provide the insured a defense in the [personal injury case]." (Emphasis in original.)

¶ 20      Apollo sent Jordan additional correspondence stating, in part,

> "Since the amount of money which the Plaintiff may recover from the lawsuit might exceed the limits of your policy, and since you would be personally liable for the amount of any judgment in excess of such limits, it is agreeable to [Apollo] should you desire to retain additional counsel of your choosing and at your expense to represent your interests in this matter."

Jordan later retained her own attorney, Caren Schulman, for purposes of filing a third-party complaint against Lincoln and Apollo in the personal injury case James filed against Jordan.

¶ 21    On February 29, 2012, Apollo filed a complaint for declaratory judgment against Jordan and James to determine whether Jordan's 2010 Policy covered the July 2, 2011 accident. Apollo's complaint was subsequently amended to add Lincoln as a defendant and sought contribution under the Joint Tortfeasor Contribution Act (740 ILCS 100/2 (West 2012)).  The amended complaint alleged, in part, that Lincoln was negligent by failing to notify Apollo of Jordan's request to replace the '91 Cadillac with the '98 Dodge and that it fraudulently misrepresented to Apollo that Jordan had not requested from Lincoln a vehicle change.

¶ 22    Jordan filed a counter-complaint for declaratory judgment and negligence against Apollo. Jordan alleged Lincoln was an agent of Apollo and, as such, her change of vehicle request to Lincoln was sufficient notice to Apollo of the requested change.

¶ 23    On April 2, 2012, James' attorney sent a letter directly to Apollo demanding the $20,000 policy limit to settle James' personal injury case.  By the time of that letter, Apollo had already filed its declaratory judgment action, discussed further below, to determine whether Jordan's accident was covered under the 2010 Policy.  However, James' settlement demand was not sent to Apollo's attorney or the attorney Apollo retained to represent Jordan in James' personal injury case.

¶ 24    In June 2013, Lincoln informed Apollo for the first time that in, May 2010,  Jordan had requested a vehicle change on the policy. Thereafter, Apollo offered to settle on the policy-limit terms proposed by James in April 2012, but James rejected the offer.

¶ 25    James' personal injury case was ultimately settled and dismissed with Apollo paying $150,000, Lincoln paying $45,000, and Jordan paying nothing. In exchange for its $150,000

settlement, Apollo received a "Covenant not to Sue" extinguishing James' claims against "[Jordan], [Apollo], Good 2 Go, American Independent Insurance Co. or any of their subsidiary or parent companies or employees or attorneys" and precluded James from participating in legal action against these individuals and entities. The Apollo covenant not to sue did not extinguish James' claims against Lincoln.

¶ 26　　Lincoln and James entered into a separate agreement entitled "General Release of All Claims" wherein Lincoln's $45,000 settlement was exchanged for James' agreement to extinguish all her claims against "[Jordan], [Lincoln] and [Apollo] and their respective agents, employees, officers, directors, servants, successor[] executors and administrators[.]" Neither Lincoln nor Apollo entered into any settlement agreements with Jordan.

¶ 27　　　　　　　　　　　　　Pretrial Discovery Issues

¶ 28　　During pretrial proceedings, a hearing was held on various matters including a series of discovery-related motions filed by Jordan against Apollo. Following that hearing, the trial judge issued a memorandum opinion and order (Rule 219 Order) finding two of Jordan's discovery motions were moot based on Apollo's compliance with the discovery requested, but also noted Apollo's failure to comply with Jordan's interrogatory request necessitating the filing of other motions to compel. In addressing Jordan's motions for sanctions pursuant to Illinois Supreme Court Rule 219 (Ill. S. Ct. R. 219 (eff. July 1, 2012)), stemming from Apollo's alleged discovery violations, the Rule 219 Order stated in relevant part as follows,

>　　　"[U]nder subpart (a) of Rule 219, the rule makes clear that *** 'if a party fails to
>
>　　　answer any interrogatory served upon him or her, or to comply with a request for
>
>　　　the production of documents' and the serving party brings a motion to compel
>
>　　　such answer or compliance, the court '*shall* require' the offending party 'to pay

the aggrieved party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees' if the refusal to answer 'was without substantial justification.' Ill. S. Ct. Rule 219.

\* \* \* \*

In the instant case, Jordan has brought two separate Motions to Compel regarding the same interrogatories originally served on Apollo in October of 2013. Jordan has alleged that no response whatsoever was received to such interrogatories until May of 2014, and it was not until July 14, 2015, that Apollo provided apparently satisfactory answers to Jordan. [Citation omitted.] Apollo has provided the Court with no justification for its egregious delay, which involved a series of alleged misrepresentations as to when answers would be provided, alleged non-compliance with Illinois Supreme Court Rule 201(b) when initial answers were provided, and initial answers that were allegedly only partially responsive, including responses of 'see attached' even though no attachment was provided. [Citation omitted.] The Court therefore finds that under rule 219(a), Jordan is entitled to any costs and such portion of Jordan's reasonable attorney fees as are attributable to Jordan's pursuit of answers to the interrogatories first served upon Apollo on October 11, 2013.

\* \* \* \*

IT IS HEREBY ORDERED that: \*\*\*

> (4) Jordan's Motion for Sanctions pursuant to Illinois Supreme Court Rule 219 is ENTERED & CONTINUED; Jordan is given until November 30, 2015, to file a petition seeking costs and reasonable attorney fees from

Apollo as a result of Apollo's failure to timely respond to interrogatories, *** and such petition and response, if any, to be taken with the remainder of the case[.]" (Emphasis in original.)

¶ 29     Jordan timely filed her fee petition pursuant to the Rule 219 Order. The fee petition included Jordan's counsel's detailed billing associated with Apollo's discovery violations totaling $8,951.25 along with her counsel's affidavit, which among other things, provided explanation for her hourly rate. Apollo filed a response to Jordan's fee petition in which it argued Jordan was not entitled to Rule 219 sanctions and alternatively argued, even if the sanction was appropriate, the billing Jordan's counsel attributed to the discovery violations was problematic and unjustified.

¶ 30                    Trial and Judgment in Declaratory Actions

¶ 31     At the commencement of trial, Jordan was given leave to amend her complaint again to add a claim for attorney fees and damages pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2018)). The case proceeded as a bench trial, and specific witness testimony relevant to our decision is as follows.

¶ 32     Noemi Ayala testified that she was Lincoln's underwriting manager. Apollo had no signs at Lincoln's place of business. Apollo never instructed or supervised her or any of Lincoln's employees with respect to how to do their job. Lincoln submitted insurance applications on behalf of its customers with submissions going to multiple insurance companies. Lincoln did not have an exclusive relationship with Apollo.

¶ 33     Jordan was Lincoln's customer who had secured insurance through another insurance company prior to obtaining insurance through Apollo. Apollo was selected by Lincoln as the insurance provider for Jordan's benefit because it offered Jordan the best rate. She referred to

Jordan as Lincoln's customer and stated it was Jordan who asked Lincoln to make her vehicle change. Ayala was aware that a written request had to be made to Apollo in order to obtain a vehicle change. All insurance companies required any vehicle change request be made in writing as a standard industry practice. The request had to be made from Lincoln to Apollo. She was aware that any policy change would have to be made by Apollo's underwriting department and those policy changes would only become effective by Apollo issuing an endorsement reflecting the change. Ayala testified that prior to the accident, Lincoln never requested a change of vehicle for Jordan's policies. She acknowledged that changing a vehicle on an existing policy was a big deal.

¶ 34    Kenneth Liss testified he was the current president of Lincoln. Lincoln never had a sign with Apollo's name, logo, or trademark on its door and never advertised with Apollo's logo or trademark. Apollo and Lincoln had entered into a Producer Agreement which was in effect at the time of Jordan's accident. The agreement between Lincoln and Apollo allowed for Apollo's collection and transmission of insurance premiums.

¶ 35    Jordan was Lincoln's customer. Jordan signed a power of attorney with Lincoln that authorized Lincoln to "make changes with the insurance companies on her behalf, and everything that is done with her signature is indicated that she is giving us permission to do these things." This would include a change of vehicle.

¶ 36    On May 26, 2010, Jordan contacted Lincoln and requested a vehicle change. It was Lincoln's procedure to accept the vehicle change information from Jordan and transmit it to Apollo for them to make any policy change. However, Jordan's request was not submitted to Apollo until July 5, 2011—after Jordan's accident. Upon receiving this request in 2011, Apollo made the change. At the time of the vehicle change submission in 2011, Lincoln did not ask

Apollo to back date the change of vehicle. Jordan's 2010 Policy was issued to Jordan at Lincoln's request. Jordan never advised Lincoln that the insurance policy and card she received on the 2010 Policy was for the wrong vehicle.

¶ 37    Bertha DeLaCruz testified she was a customer service representative at Lincoln. She testified there were no signs or mention of Apollo anywhere at Lincoln's place of business, Apollo never supervised or told DeLaCruz how to do her job, and she did not answer to anyone at Apollo.

¶ 38    Sue Shields testified she was Apollo's assistant vice president of underwriting. She testified that a change of vehicle on a policy could only be processed by Apollo's underwriting department and that this was only accomplished by Apollo's issuance of a vehicle change endorsement. It was Lincoln's responsibility to accept the change of vehicle request from the insured and transmit that information to Apollo. The application for the vehicle change and the endorsement had to be in writing pursuant to Apollo's underwriting guidelines which had been sent to Lincoln.

¶ 39    Jordan testified she was one of Lincoln's customers from 2004 through the time of trial. While insured by Apollo, she never put anything in writing asking Apollo or Lincoln to change any of her Policies from the '91 Cadillac to the '98 Dodge. Her requested vehicle change was made to Lincoln and was a verbal request made over the telephone. She relied on Lincoln's customer service to effectuate the vehicle change she requested. Jordan received her 2010 policy and insurance card. She testified that she never informed Lincoln or Apollo there was an error on the 2010 policy or insurance card stating, "I didn't pay attention." The same was true of the 2010 policy contract about which Jordan further testified "I didn't pay attention to the wrong car that was on [the 2010 Policy] because I knew I had informed Lincoln of the vehicle change."

Jordan testified she contacted Apollo and communicated directly with Apollo for the first time to report the accident 48 hours after it had occurred.

¶ 40    Jordan testified about her representation by the lawyers hired to represent her under Apollo's reservation of rights in James' personal injury case.  She felt the firm's representation was inadequate.  However, Jordan never voiced this concern to anyone at Apollo.  She testified her complaint was not that her case with James was not settled.  Instead she stated, that she felt the representation from the attorney was inadequate because he was an employee of Apollo Insurance who was denying the claim.

¶ 41    Jordan further testified she was "[n]ot being informed, not being kept abreast of the proceedings.  So there were several different things I was misinformed or confused about."  With respect to this misinformation, Jordan testified "I mean, just—the procedure about the case.  I had insurance.  The denial was—It was denied by the insurance company for a passenger that was in the vehicle, and I was insured by them."  Jordan felt like she was misinformed "[a]bout the coverage, about how the vehicle was switched over.  It was just different things that I was misinformed."  She further testified, "Well, I was misinformed about switching the vehicle because I knew I had spoke to an agent from Lincoln informing them I was switching the vehicles over.  So I was really confused as to how they were denying the claim, but I was insured by them so they had to give me an attorney; but he was working for them.  He wasn't working on my behalf.  He was working on their behalf."

¶ 42    We note that Apollo's 46 admitted trial exhibits and Jordan's 5 admitted trial exhibits are not included as part of the record except where they appear as attachments to other filed pleadings contained in the record.

¶ 43    After the parties' submission of their respective proposed findings of fact and conclusions of law, Apollo sought to amend its pleading to conform with the proofs to include a count against Lincoln for negligent misrepresentation pursuant to section 2-616(c) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-616(c) (West 2018)).  Apollo's request was denied.

¶ 44    On March 7, 2019, the trial court issued its Memorandum and Order finding Lincoln was not Apollo's agent and did not have actual or apparent authority to accept Jordan's notice of vehicle change on Apollo's behalf. The trial court further found that the policy agreement was not ambiguous, and that it should be enforced as written.  The trial court concluded the 2010 Policy did not cover Jordan's accident and entered judgment in favor of Apollo and against Jordan as to counts I and II of its first amended complaint.  With respect to Apollo's claims against Lincoln, the trial court found Lincoln's failure to inform Apollo of Jordan's vehicle change request and to produce all of its records requested in discovery was not a breach of fiduciary duty or a fraud and further found that Apollo failed to establish any damages due to Lincoln's conduct and was thus not entitled to recovery or contribution from Lincoln. Accordingly, the trial court entered judgment against Apollo and in favor of Lincoln as to counts II, III, and IV of Apollo's first amended complaint.

¶ 45    With respect to Jordan's second amended counterclaim, the trial court concluded Jordan was not entitled to reformation and entered judgment against Jordan and in favor of Apollo.  The trial court further found that Jordan failed to establish any negligence by Apollo resulting from Lincoln's conduct in failing to advise Apollo of Jordan's vehicle change request based on its determination that Lincoln was not an actual or apparent agent of Apollo for purposes of accepting a vehicle change request.  Accordingly, the trial court entered judgment in favor of Apollo and against Jordan as to count II of her second amended counterclaim.  As the trial court

found Jordan was not entitled to coverage under the 2010 Policy, it denied Jordan's request for recovery pursuant to section 155 of the Illinois Insurance Code and entered judgment against Jordan and in Apollo's favor as to count IV of Jordan's second amended counterclaim.

¶ 46    Following the entry of judgment, Jordan moved for a determination with respect to appropriate attorney fees for discovery violations pursuant to her previously filed Rule 219 fee petition and the trial judge's Rule 219 Order.  The trial court denied Apollo's request for time to respond to Jordan's motion seeking a determination as to appropriate Rule 219 fees as well as its request for an evidentiary hearing.  On April 1, 2019, the trial court entered an order resolving Apollo's Rule 219 sanctions request finding Jordan's counsel's billing rate reasonable and requiring Apollo to pay Jordan's attorney fees for 20.15 hours in attorney time totaling $5,568.75 with the remaining hours deemed unreasonable.

¶ 47    On April 3, 2019, Jordan filed her first notice of appeal.

¶ 48    On April 8, 2019, Apollo filed a pleading which requested, among other relief, (a) a contempt finding against Lincoln for allegedly violating a subpoena; (b) sanctions pursuant to Illinois Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. Jan. 1, 2018)) against Jordan for the filing of her Second Amended Complaint, (c) a second request to amend its complaint with respect to Lincoln to include negligent misrepresentation; and (d) a request to vacate the trial court's Sanctions Order.

¶ 49    On April 11, 2019, Apollo filed its notice of cross-appeal.

¶ 50    On May 9, 2019, the trial court ruled that it had no jurisdiction to hear Apollo's motion stating the court was without jurisdiction due to Apollo and Jordan's prior notice of appeal filing, but also denied Jordan's request (a) for Rule 137 sanctions, (b) to amend its pleadings to conform to the proofs, and (c) to vacate the Sanctions Order.  In a separate order entered that

same day, the trial court set a briefing schedule on Apollo's contempt petition which was subsequently denied by the trial court. On June 6, 2019, Apollo filed an amended notice of appeal.

¶ 51                                     ANALYSIS

¶ 52                               I.  Jordan's Appeal

¶ 53                          A.  Illinois Supreme Court Rule 341

¶ 54     Before we consider the merits of Jordan's appeal, we address Apollo's argument that Jordan violated Supreme Court Rule 341 (Ill. S. Ct. R. 341 (eff. May 25, 2018)) in her statement of facts and that the purported violation should result in the forfeiture of her arguments on appeal.  Supreme Court Rule 341(h)(6) provides that an appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal[.]" *Id.*

¶ 55     Apollo highlights several violations of the Rule within Jordan's brief.  Specifically, Apollo points out that Jordan's brief violates section (h)(6) of Rule 341 by including argument and citation to legal authority in her statement of facts.  Apollo further points out various statements within her fact section which were either not supported by the record or which included record citations to depositions, interrogatory responses, and allegations but which were not introduced as evidence at trial.  We decline to find Jordan has forfeited her arguments on appeal.  Instead, in deciding the issues raised on appeal we will not consider those facts set forth in Jordan's brief which we deem violative of Rule 341.  See *Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054, 1058 (1999) (declining to consider on appeal those portions of appellant's statement of facts which violate Rule 341).

¶ 56    Apollo also argues that the record on appeal does not contain any of the trial exhibits and, as such, "this court must presume that the trial court correctly entered judgment against Jordan." We agree with Apollo that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal it will be presumed that the order entered by the trial court was in conformity with the law and has a sufficient factual basis" with "[a]ny doubts *** resolved against the appellant." See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). We apply this principal where appropriate in our decision.

¶ 57                    B. Jordan's Argument for Insurance Coverage

¶ 58    Turning to the merits of the appeal, Jordan argues that the trial court erred in finding Lincoln was not an agent of Apollo for purposes of receiving Jordan's change of vehicle request made to Lincoln. Alternatively, Jordan argues the trial court erred by not finding Apollo waived or was estopped from pursuing a declaratory judgment of no coverage on a basis different than that set forth in Apollo's reservation of rights letters to Jordan.

¶ 59    The parties dispute the applicable standard of review with Jordan arguing the facts are uncontested and the only issue is the trial court's application of the law allowing for *de novo* review. Apollo points out that Jordan fails to identify uncontested facts and maintains that the appropriate review is under the manifest weight of the evidence standard.

¶ 60    As explained in *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589 (2009), "the proper standard of review to be applied to declaratory judgments depends on the nature of the proceedings in the trial court:

> [W]hether appellate review of trial courts' decisions is deferential is a function of
> the division of labor between trial courts and courts of review. Courts of review

accord deference to those trial court decisions that are within the special

competence of the trial courts [such as the admissibility of evidence, credibility

determinations, and the weighing of conflicting evidence], and only to those

decisions. When we are reviewing a type of decision that the trial court was

better qualified to make, we must proceed with due recognition of the trial court's

superior vantage point. Otherwise, we must exercise our prerogative to decide the

issue without deference to the trial court." (Internal quotations omitted.) *Id.* at

593.

Accordingly, "to the extent it is not based on factual determinations that are the trial court's

province the trial court's decision in a declaratory judgment action is subject to *de novo* review."

(Internal quotations omitted.) *Id.*

¶ 61    We agree with Apollo the question of agency involved credibility determinations and

weighing of conflicting evidence. Accordingly, the question of whether an agency relationship

exists and the scope of the purported agent's authority is a question of fact which will only be

reversed where the ruling is against the manifest weight of the evidence. *First Chicago

Insurance Co. v. Molda*, 2015 IL App. (1st) 140548, ¶ 51. "A judgment is against the manifest

weight of the evidence only when the opposite conclusion is apparent or when findings appear to

be unreasonable, arbitrary, or not based on evidence." (Internal quotation marks omitted.) *Id.*

¶ 62    Where the agency question calls for us to interpret the insurance policy, however, our

review is *de novo*. The construction of the provisions of an insurance policy is a question of law

which we review *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). We

further note that an appellate court may affirm a lower court's judgment on any ground

supported by the record. *In re Kendale H.*, 2013 IL App (1st) 130421, ¶ 31. For the reasons set forth below, we affirm the trial court's judgment with respect to Jordan's arguments on appeal.

¶ 63                                    Contract Law

¶ 64    While Jordan's arguments on appeal center around the law of agency and the trial court's determination that Lincoln was not an actual or apparent agent of Apollo such that Jordan's oral change of vehicle notice to Lincoln could be imputed to Apollo, the question of agency is not necessary to the resolution of whether Jordan's accident was a covered loss. Instead, resolution of this issue turns on interpretation of the provisions of Jordan's policies with respect to notice of a vehicle change and the timing and manner in which such changes are effectuated under the Policy contracts.

¶ 65    Our supreme court has set forth standards for interpreting an insurance policy as follows:

>    "In construing an insurance policy, we must ascertain and give effect to the intentions of the parties, as expressed in the policy language. [Citation.] The policy must be construed as a whole, giving effect to every provision. [Citation.] Unambiguous words in a policy are to be given their plain, ordinary, and popular meaning. [Citation.] Where the policy language is ambiguous, courts are to construe the policy liberally in favor of coverage. [Citation.]" *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184-85 (2010).

"Illinois courts have long recognized that an insurance contract includes the printed form policy, declarations, and any endorsements." (Internal quotation marks omitted.) *Alshwaiyat v. American Service Insurance Co.*, 2013 IL App (1st) 123222, ¶ 33. With respect to the cancellation of an insurance policy, this court has stated where "the testimony and evidence clearly shows that there was noncompliance with the terms and provisions of the policy

governing cancellation and without strict compliance with the cancellation provisions there could be no valid cancellation by either the insured or the insurer." *Kerr v. Pusateri*, 64 Ill. App. 2d 172, 175-76 (1965).

¶ 66 As stated earlier, both Jordan's '09 and '10 Policies set out the procedure by which a vehicle change on the policy was to be made. The policies provided that, to be effective, notice of a vehicle change had to be in writing and given directly to Apollo. Further, notice to an agent and knowledge of an agent about a change is insufficient under the policy governing the parties' relationship:

> "2. Premium. If the named insured [Jordan] disposes of or replaces a private passenger *** automobile, [s]he shall inform [Apollo] *in writing* within 30 days of such change.
>
> * * * *
>
> 15. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this policy or stop [Apollo] from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, *except by endorsement issued to form a part of this policy, signed by a duly authorized representative of [Apollo].*" (Emphases added.)

¶ 67 Jordan's Policies were unambiguous and clearly required notice of a vehicle change on the Policies to be made to Apollo *and* to be in writing. Moreover, the Policies further stated that no changes would be effective, *even with notice to an agent*, unless an endorsement signed by Apollo was issued.

¶ 68    Apollo's employee Shields testified consistent with the Policies that a change of vehicle could only be processed by Apollo's underwriting department and that this is only accomplished by Apollo's issuance of a vehicle change endorsement.  She testified that it was Lincoln's responsibility to accept the change of vehicle request from the insured and transmit that information to Apollo.  She testified that the application for the vehicle change and the endorsement had to be in writing pursuant to Apollo's underwriting guidelines which were sent to Lincoln.  Lincoln's employee Ayala confirmed this was Apollo's procedure.  Ayala further testified that a vehicle change to a policy was a big deal and the written notice requirement for a such a change was standard practice in the industry.

¶ 69    Jordan testified she never put a vehicle change request in writing to anyone.  Instead, her request, made only to Lincoln, to change the '91 Cadillac to the newly acquired '98 Dodge was a verbal request made over the telephone.  Lincoln employee Liss testified that Jordan's request to Lincoln was made on May 26, 2010.  Ayala testified that prior to Jordan's accident, Lincoln never requested that Apollo make a vehicle change on Jordan's Policies.  Accordingly, Apollo did not receive the vehicle change request within 30 days of Jordan's acquisition of the '98 Dodge as required by her Policies.  Shields testified the only vehicle change endorsement issued on Jordan's Policies was the July 6, 2011 change following Jordan's accident.

¶ 70    Here, similar to *Kerr*, the evidence clearly shows that the notice to effectuate a change to the insurance policy was not accomplished in accordance with the terms and provision of Jordan's Policies governing a change of vehicle and, thus, no change was accomplished prior to Jordan's accident that would entitle Jordan to coverage from Apollo.  See *Kerr*, 64 Ill. App. 2d at 175-76.  Jordan's failure to provide written notice of a vehicle change to Apollo, or even Lincoln—if we were to accept Lincoln was Apollo's agent for this purpose, which we do not as

explained below—made the request insufficient under the Policies to accomplish a vehicle change. On the date of Jordan's July 2, 2011 accident, the only vehicle covered under the '10 Policy was Jordan's '91 Cadillac. It is further undisputed that the '98 Dodge did not fall into any categories that would have entitled Jordan to coverage under the '10 Policy. On this basis, we affirm the trial court's declaratory judgment in favor of Apollo under which it found that Jordan was not entitled to coverage from Apollo for her accident.

¶ 71        Lincoln Was Not An Agent of Apollo To Effect Policy Changes

¶ 72    Jordan argues Lincoln was an agent with apparent authority to effectuate a change of the insured vehicle. We conclude the verbal notice given to Lincoln was insufficient, even if Lincoln was an agent, because the policy specifically stated that the knowledge of an agent was not adequate to change the policy and required the notice to be in writing. Specific provisions of the policy clearly state that Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change to the policy. So whether Lincoln was an agent or not, under the terms of the contract, a verbal notice to Lincoln did not satisfy the specific policy requirement that changes be made directly to Apollo in writing, and is contrary to the other specific term that notice to an agent is ineffective.

¶ 73        C. Jordan's Estoppel/Waiver Arguments

¶ 74    Jordan alternatively argues the trial court erred by not finding that Apollo waived or was estopped from pursuing a declaratory judgment that Jordan's accident was not covered by her 2010 Policy with Apollo. Jordan argues that, in the reservation of rights letter sent to her by Apollo, Apollo failed to advise her of a possible conflict of interest in defending against the James lawsuit. Jordan argues this deficiency constituted a waiver by Apollo of the right to defend under a reservation of rights.

¶ 75    Waiver and estoppel are two separate and distinct doctrines. *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 21. Waiver consists of an express or implied voluntary and intentional relinquishment of a known right, while estoppel refers to an abandonment, by operation of law, of the insurer's rights where the assertion of those rights would be inequitable. *Id*.

¶ 76    "Generally, where a complaint against the insured alleges facts within or potentially within the coverage of the insurance policy and when the insurer takes the position the policy does not cover the complaint, the insurer must (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Id*. at ¶ 25. "If an insurer fails to take either action and the court subsequently finds the insurer has *wrongfully* denied coverage, the insurer may not assert policy defenses to avoid coverage." (Emphasis added.) *FHP Tectonics Corp. v. American Home Assurance Co.*, 2016 IL App (1st) 130291, ¶ 41. However, estoppel does not apply where an insurer has no duty to defend, and estoppel cannot create coverage where none existed. *Id*; see also *Schuster v. Occidental Fire and Casualty Company of North America*, 2015 IL App (1st) 140718, ¶ 29. This is the case even where the basis for no coverage is different than that asserted by the insurance company to the insured in its claim denial letter. *See id*. at ¶ 32. "Absent a reservation of rights, an insurer waives all questions of policy coverage when it assumes an insured's defense[.]" *Id*. at ¶ 22. As with estoppel, however, waiver cannot be the basis for creating a contract of coverage where no such coverage previously existed. See *id*. at ¶ 29.

¶ 77    Here, it is undisputed that Apollo both defended under a reservation of rights *and* filed a declaratory judgment action. Jordan does not argue that either of these actions were untimely nor does the record reveal this to be the case. Moreover, the trial court concluded there was no

coverage under the Apollo Policy and, as explained above, we agree with that conclusion. Further, the basis for the trial court's finding and our agreement that no coverage existed was the same reason set forth in Apollo's reservation of rights—the '98 Dodge Stratus was not a listed vehicle on Jordan's '10 Policy. Accordingly, neither estoppel nor waiver apply against Apollo in this case.

¶ 78    Additionally, there was no conflict of interest even if "Apollo [was] convinced it had no exposure for the underlying claim." See *Country Mutual Insurance Co. v. Olask*, 391 Ill. App. 3d 295, 302 (2009) ("An insurer's interest in negating policy coverage does not, in and of itself, give rise to a conflict of interest."). Similarly, no conflict exists simply because "James [could] recover an amount in excess of [Jordan's] policy limits." See *Joseph T. Ryerson & Son, Inc. v. Travelers Indemnity Company of America*, 2020 IL App (1st) 182491, ¶ 57 (holding the fact that damages exceed the limits of the insurance policy does not generally amount to a conflict of interest sufficient to require appointment of independent counsel; rather, in these situations the proper action is to inform the insureds of the possibility of an excess judgment and advise the insured to consult independent counsel at their expense). As Jordan points out in her brief on appeal, this is exactly what Apollo did in its reservation of rights letters to Jordan.

¶ 79    Additionally, there was no evidence that Apollo or the attorneys hired by Apollo to defend Jordan acted deficiently or breached any duty to Jordan as she contends. As Apollo points out, "it is settled law that 'no fiduciary relationship exists between an insurer and an insured as a matter of law.' " *Illinois State Bar Association Mutual Insurance v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 32 (quoting *Martin v. State Farm Mutual Automobile Insurance Co.*, 348 Ill. App. 3d 846, 850-51 (2004)). Apollo's employee Tau testified that the attorneys hired to defend Jordan were experienced defense attorneys previously used by Apollo. The attorney

selection was not influenced by Apollo's belief there was no coverage for the accident. Tau also testified she would not have done anything different had Jordan's accident been indisputably covered by Apollo. Apollo did not instruct the attorney to provide a lesser defense and left the litigation strategy up to the attorneys without restriction by Apollo.

¶ 80    The attorney defending Jordan in James' personal injury case was an experienced personal injury defense lawyer. He testified that he reviewed Jordan's case file carefully upon receipt of it. He explained that in the initial stages of the case Jordan was not cooperative or responsive to communications. He did not receive a policy demand letter from James' counsel but engaged in discussion with opposing counsel about a policy demand which had no specific expiration date. He was not surprised James' 2011 lawsuit was dismissed because James could not prove up her case at that point.

¶ 81    When James' case was refiled in 2016, he received interrogatories, he requested James' deposition, he also attended Jordan's deposition and represented Jordan during that deposition. He received three volumes of medical records relating to James which included bills. He testified it was not standard procedure to depose the plaintiff's doctors in every case and it was defense strategy not to depose a treating physician and not to name a doctor as a witness.

¶ 82    Moreover, Jordan could not identify anything specific the attorneys did wrong. Jordan testified her complaint with the attorneys was not that her case was not settled. In fact, Apollo ultimately settled the case which was a business decision based on the mounting cost of the litigation. Jordan's criticisms of the attorneys focused on her belief she was misinformed because Apollo was, in her view, wrongfully denying coverage and her incorrect view that the attorney's worked for Apollo, rather than any deficient performance by counsel in handling the case on her behalf.

¶ 83    We find no breach of duty occurred.  As to Jordan's request for section 155 sanctions, we additionally note that "a defendant cannot be liable for section 155 [of the Insurance Code, 215 ILCS 5/155 (West 2018)] relief where no benefits are owed" as is the case here.  See *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 764 (2000).  Accordingly, such sanctions were properly denied by the trial court.

¶ 84                                II.  Apollo's Cross-Appeal

¶ 85    For its cross-appeal, Apollo makes three arguments.  Apollo argues the trial court erred in (A) not finding Lincoln accountable for negligent misrepresentation and denying Apollo's request to amend its pleadings to include this claim; (B) awarding Jordan attorney fees under Supreme Court Rule 219; and (C) denying Apollo's motion for Rule 137 sanctions against Jordan.

¶ 86    As noted above, the standard of review of a judgment following trial is that the judgment will not be reversed on appeal unless it is against the manifest weight of the evidence.  *Wildman, Harold, Allen and Dixon v. Gaylord*, 317 Ill. App. 3d 590, 598 (2000).  Meanwhile, the decision whether to grant leave to amend a pleading rests within the sound discretion of the court and will not be disturbed absent an abuse of discretion.  *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 113 (2011).

¶ 87    Trial courts have substantial discretion in ruling on discovery sanctions, and such rulings will not be overturned absent an abuse of discretion.  *Wagner v. City of Chicago*, 254 Ill. App. 3d 842, 849 (1993).  The trial court similarly has discretion to grant or deny a motion for Rule 137 sanctions which is reviewed for an abuse of discretion.  *Peterson v. Randhava*, 313 Ill. App. 3d 1, 9 (2000).  An abuse of discretion occurs when a trial court's finding is against the manifest weight of the evidence, or if no reasonable person would take the view adopted by the court.

*Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000). For the reasons set forth below, we affirm the trial court's judgment with respect to Apollo's arguments on appeal.

¶ 88                          A.  Negligent Misrepresentation

¶ 89    Apollo argues that its first amended complaint at issue during the trial sufficiently alleged the elements of negligent misrepresentation and, alternatively, the trial court erred in denying its request to amend its pleading pursuant to section 2-616 of the Code (735 ILCS 5/2-616 (West 2018)). We disagree.

¶ 90    Section 2-616 of the Code allows for the amendment of a pleading "any time, before or after judgment, to conform the pleadings to the proofs[.]" *Id*. Section 2-617 of the Code provides for the amendment of pleadings seeking the wrong remedy and states as follows:

> "Where relief is sought and the court determines, on motion directed to the
>
> pleadings, *** or upon trial, that the plaintiff has pleaded or established facts
>
> which entitled the plaintiff to relief but that the plaintiff has sought the wrong
>
> remedy, the court shall permit the pleadings to be amended, on just and
>
> reasonable terms, and the court shall grant the relief to which the plaintiff is
>
> entitled on the amended pleadings or upon the evidence. In considering whether a
>
> proposed amendment is just and reasonable, the court shall consider the right of
>
> the defendant to assert additional defenses, to demand a trial by jury, to plead a
>
> counterclaim or third party complaint, and to order the plaintiff to take additional
>
> steps which were not required under the pleadings as previously filed." 735 ILCS
>
> 5/2-617 (West 2018).

¶ 91    Factors to be considered in determining whether to permit an amendment to the pleadings include:

> "(1) whether the amendment cures a defect in the pleadings; (2) whether the other party is prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether there were previous opportunities to amend the pleadings." *Goldberg*, 409 Ill. App. 3d at 113.

¶ 92    Apollo specifically argues its amended complaint, "at issue at the time of trial, alleged the elements of fraud plus negligence, plus a duty owed to Apollo by Lincoln" and, as such, "sufficiently alleged the elements of negligent misrepresentation." Apollo further alleges "Lincoln admitted that the trial evidence would entitle Apollo to recover for negligent misrepresentation but denied Apollo pled negligent misrepresentation." Apollo contends this was admitted by Lincoln in its "Proposed Findings of Facts and Conclusions of Law" but cites only to its own motion to amend its pleadings. Neither Apollo's citation to its motion nor the record contain a copy of Lincoln's "Proposed Findings of Fact and Conclusion of Law." We note that Apollo, as appellant in the cross-appeal, has the burden of presenting a sufficiently complete record with respect to its claims of errors, and thus, "doubts arising from the incompleteness of the record [with respect to Apollo's claims of error on appeal] will be resolved against [Apollo,] the [cross-]appellant." *Pickus Construction & Equipment Company, Inc. v. Bank of Waukegan*, 158 Ill. App. 3d 141, 147 (1987); see also *Foutch*, 99 Ill. 2d at 391-92.

¶ 93    Regardless, the trial court concluded that while Lincoln failed to notify Apollo of Jordan's May 26, 2010 vehicle change request,

> "Apollo has failed to establish, by a preponderance of the evidence, that either Lincoln's failure to inform Apollo of Jordan's May 26, 2010 vehicle change

request or its failure to produce all records requested via Apollo's May 8, 2013 subpoena, amounted to either a breach of fiduciary duty or a fraud upon Apollo[,] *** [or] establish *** Apollo sustained any damages, in any amount, due to Lincoln's conduct."

¶ 94    As Apollo itself points out, an element of both negligent and fraudulent misrepresentation is that there be damage to a party resulting from its reliance on a false statement of material fact made by the other party.  See *Board of Education of City of Chicago v. A,C and S, Inc.*, 131 Ill. 2d 428, 452 (1989) (setting forth "the elements in a fraudulent misrepresentation as: (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance," and explaining that "[n]egligent misrepresentation has essentially the same elements, except that the defendant's mental state is different" and "a plaintiff must also allege that the defendant owes a duty to the plaintiff to communicate accurate information.").

¶ 95    The trial court did not abuse its discretion in denying Apollo's request to amend its pleadings because such an amendment would not cure the defect in Apollo's pleading to entitle Apollo to relief.  See *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 57 ("An amendment to conform the pleadings to the proofs is permissible pursuant to section 2–616(c), but 'the proof already produced must support the amendment.' "); *Foley v. Godinez*, 2016 IL App (1st) 151814, ¶ 35 (where "the pleading contains facts *entitling the plaintiff to relief* on a different legal theory, the court may permit the pleading to be amended. 735 ILCS 5/2–617 (West 2012)." (Emphasis added.)); *Goldberg*, 409 Ill. App. 3d at 113 (holding one consideration in determining whether to permit an amendment to the pleadings is "whether the amendment

cures a defect in the pleadings"). Even if Apollo's first amended complaint could be read to include a claim of negligent misrepresentation, it still would have failed to prove all the elements of the claim—specifically that Apollo was damaged.

¶ 96    As Lincoln has argued, the trial court did not abuse its discretion because Apollo is not entitled to damages from Lincoln pursuant to section 100/2(e) of the Joint Tortfeasor Contribution Act which states, "A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e) (West 2016). Paragraph (c) states,

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2016).

¶ 97    The trial court's findings noted that James settled all her claims against Apollo for $150,000, and in exchange Apollo received a "Covenant Not to Sue" from James which by its explicit terms extinguished James' claims against Jordan, Apollo and others, but not Lincoln. Further, Lincoln entered into a separate settlement agreement by which Lincoln settled James' claims against it in the amount of $45,000. We are not persuaded by the characterization of these separate agreements as a single settlement. Accordingly, Apollo is not entitled to contribution from Lincoln. See 740 ILCS 100/2(e) (West 2016). As such, Apollo's request to

amend would not cure the defect in Apollo's pleading and the trial court did not abuse its discretion in denying Apollo's request.

¶ 98    We also disagree with Apollo's argument that because the trial court allowed Jordan to amend her pleadings, it should have also allowed Apollo to do so in order to avoid disparate treatment of the parties.  Apollo cites no authority that stands for the proposition that relief on such a basis is warranted, and we disagree that such an analysis would be appropriate, particularly in light of the factors for consideration enumerated above which, as explained, do not entitle Apollo to its requested relief.

¶ 99       B.  Attorney Fees Awarded Pursuant to Illinois Supreme Court Rule 219

¶ 100   Apollo also argues that the trial court erred in awarding Jordan attorney fees pursuant to Illinois Supreme Court Rule 219 contending (i) Apollo's conduct under the circumstances was not unreasonable; (ii) the award was an unjust punishment; (iii) the court mistakenly believed it had no discretion to deny the discovery sanction; and (iv) Apollo was entitled to a hearing on the reasonableness of the attorney fees Jordan sought.

¶ 101   Illinois Supreme Court Rule 219 provides for an award of attorney fees where a party has failed to comply with discovery rules and states in relevant part as follows:

> "(a) Refusal to Answer or Comply with Request for Production.  *** if a
> party fails to answer any interrogatory served upon him or her, or to comply with
> a request for the production of documents or tangible things or inspection of real
> property, the proponent of the question or interrogatory or the party serving the
> request may on like notice move for an order compelling an answer or compliance
> with the request.  If the court finds that the refusal or failure was without
> substantial justification, the court shall require the offending party or deponent, or

the party whose attorney advised the conduct complained of, or either of them, to pay to the aggrieved party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees.

\* \* \* \*

**(c) Failure to Comply with Order or Rules.** If a party \*\*\* unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following: \*\*\*

[T]he court, upon motion or upon its own initiative, may impose upon the offending party \*\*\* an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is willful, a monetary penalty. \*\*\*

Where a sanction is imposed under this paragraph (c), the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 219 (eff. July 1, 2002).

"A party's noncompliance is unreasonable and sanctionable if it is characterized by a deliberate and pronounced disregard for the discovery rules and the court." *Wagner v. City of Chicago*, 254 Ill. App. 3d 842, 850 (1993).

¶ 102   Rule 219 provides two classes of remedies for discovery violations that provide attorney

fees awards: (1) a required assessment of attorney fees under Rule 219(a) and (2) a discretionary

assessment of fees under Rule 219(c).  *Van Hyning v. Hyk*, 78 Ill. App. 3d 721, 724 (1979).  Rule

219(a) allows a court to impose reasonable fees and costs against the offending party where the

noncompliance with discovery rules and orders has been without substantial justification.  See

Ill. S. Ct. R. 219(a) (eff. July 1, 2002).

¶ 103   The attorney fees awarded here were pursuant to Rule 219(a) as set forth in the trial

court's April 1, 2019 Sanctions Order.  While Apollo is correct that October 28, 2018 Rule 219

Order found Rule 219(c) sanctions would be inappropriate, the trial court went on to state,

> "under subpart (a) of Rule 219, the rule makes clear that *** 'if a party fails to
>
> answer any interrogatory served upon him or her, or to comply with a request for
>
> production of documents,' and the serving party brings a motion to compel such
>
> answer or compliance, the court '*shall* require' the offending party 'to pay to the
>
> aggrieved party the amount of the reasonable expenses incurred in obtaining the
>
> order, including reasonable attorney's fees' if the refusal to answer or failure to
>
> comply 'was without substantial justification.'  Ill. S. Ct. Rule 219." (Emphasis
>
> in original.)

¶ 104   While Jordan's original motion sought sanctions pursuant to Rule 219(c), this court has

affirmed a trial court's award of Rule 219(c) attorney fees on the basis that such fees were

appropriate under Rule 219(a).  See *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 62 ("In

addition to Rule 219(c), we also find that the sanction *** can be affirmed under Rule 219(a)"

though the court "recognize[d] that the trial court did not impose sanctions under this section of

the rule.").  Moreover, as noted above, the trial court's award of attorney fees was expressly

pursuant to Rule 219(a). Jordan's November 24, 2015 fee petition sought fees pursuant to Rule 219 generally and her subsequent motion to quantify fees was brought pursuant to Rule 219(a).

¶ 105   Without any citation to the record or other support, Apollo argues the trial court "mistakenly believed it had no discretion to deny sanctions." We disagree with Apollo's argument with respect to the Rule 219(a) attorney fees awarded here. The procedure set forth in Rule 219(a) was complied with and we find the trial court did not abuse its discretion in finding Apollo's failure to comply with Jordan's discovery request was without substantial justification.

¶ 106   The trial court's Rule 219 Order specifically found, after the hearing on Jordan's motions to compel, that Apollo failed to answer Jordan's interrogatories requiring Jordan to file more than one motion to compel on the issue. As set forth in the Rule 219 Order, Jordan originally served Apollo with interrogatories in October 2013. It was not until May 2014 that Jordan received any response to her interrogatories; however, those responses were insufficient. The court found Jordan did not receive satisfactory responses to her interrogatories until July 14, 2015. It was further noted in the Rule 219 Order that Jordan had to bring two separate motions to compel regarding the same interrogatories.

¶ 107   Significantly, the Rule 219 Order found Apollo's failure to respond to Jordan's interrogatories was without substantial justification. Specifically, the order stated:

> "*Apollo has provided the Court with no justification for its egregious delay*, which involved a series of alleged misrepresentations as to when answers would be provided, alleged non-compliance with Illinois Supreme Court Rule 201(b) when initial answers were provided, and initial answers that were allegedly only partially responsive, include responses 'see attached' even though no attachment was provided." (Emphasis added.)

¶ 108   We are not persuaded that Apollo's explanations on appeal for its failure to comply with Jordan's interrogatory requests—a substitution of judge, lengthy absences of the subsequently assigned judge, and occupation with the related Law Division case—are reasonable.  Moreover, Apollo cites no case law that would suggest the trial court would have abused its discretion in awarding sanctions in light of the aforementioned alleged justifications for the lengthy delay in Apollo tendering its interrogatory answers or excuse the manner in which Apollo conducted itself until satisfactory responses were tendered to Jordan.

¶ 109   Furthermore, while the trial court declined to award fees pursuant to subpart (c) of Rule 219, it stated "the failure to comply with discovery here was egregious enough to at least raise the issue of attorney's fees" and further indicated that an award of fees was "likely, because Apollo never responded for the longest time.  And then when they did respond, it was not satisfactory until we had our conference."  The trial court further commented "219(a) allows attorney's fees" and ordered Jordan's counsel to file her fee petition.  Here, the requisite finding necessary for a fee award under Rule 219(a) was made—Apollo's failure to respond to interrogatories was without justification let alone substantial justification as required under subpart (a) of Rule 219.

¶ 110   Jordan argues that she was entitled to an evidentiary hearing on the reasonableness of the attorney fees, citing *Williams Montgomery & John, Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 49. *Williams Montgomery & John, Ltd.* provides that, in the context of Rule 137 sanctions, generally an evidentiary hearing is required to determine the reasonableness of the fees requested.  *Id.*  However, in that case, the court goes on to state,

> "Simply presenting the bills issued to the client or listing work hours multiplied
>
> by an hourly rate will not justify a fee award.  [Citation omitted.]  Instead, the fee

petition must '*specify* the services performed,' as well as the attorney who performed the services, the time expended, and the hourly rate charged. [Citation omitted.] An evidentiary hearing is not always necessary in order to determine reasonable attorney fees if the trier of fact can determine a reasonable amount from the evidence presented, '*including a detailed breakdown to fees and expenses*,' and the party opposing the award is not denied an opportunity to present evidence. [Citation omitted.]" *Id.*

¶ 111 Our supreme court has also noted "courts frequently award attorney fees without discovery of the party charged with paying them and without holding an evidentiary hearing." *Raintree Health Care Center v. Illinois Human Rights Commission*, 173 Ill. 2d 469, 495 (1996). Here, Jordan's fee petition and the affidavit submitted by her attorney sufficiently included a detailed explanation of the services performed, the attorney who performed them, the time expended, and the hourly rate charged. The attorney's affidavit further outlined her education and experience as well as the nature of the work involved in this matter. We do not view the description of the services performed as opaque, as was the case in *Williams Montgomery & John, Ltd.* where this court found a hearing on the reasonableness of the fees necessary. See *Williams Montgomery & John, Ltd.*, 2017 IL App (1st) 161063. The trial court, "being fully advised in the premises," deemed the hourly rate reasonable and reduced the requested fee award from $8,951.25 to $5,568.75 in an exercise of its discretion finding the remaining time unreasonable.

¶ 112 Moreover, in making its ruling on the reasonableness of Jordan's attorney fees, the trial court had the benefit of the October 28, 2015 Rule 219 Order as well as Apollo's response to Jordan's fee petition wherein Apollo highlighted specific billing entries for which it argued

Jordan was not entitled to fees. The majority of the supposedly objectionable billing time outlined in Apollo's response related to time spent in court, clerical activities, and discovery-related work Apollo incorrectly claimed was moot based on the October 28, 2015 Rule 219 Order. Accordingly, we hold that the trial court did not err in failing to hold an evidentiary hearing on Jordan's fee petition.

¶ 113                            C. Illinois Supreme Court Rule 137 Sanctions

¶ 114   Finally, we cannot say the trial court abused its discretion in denying Apollo's request for Illinois Supreme Court Rule 137 sanctions for Jordan's filing of her countercomplaint and amended countercomplaint based on her claim that Lincoln was an actual or apparent agent of Apollo. Rule 137 allows for the imposition of sanctions with respect to unfounded pleadings and states as follows:

> "Every pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

¶ 115   "[T]he rule is designed to prohibit the abuse of the judicial process by claimants who make vexatious and harassing claims based upon unsupported allegations of fact or law" but "is

not intended to penalize litigants and their attorneys merely because they were zealous, yet unsuccessful." *Peterson*, 313 Ill. App. 3d at 7. Because it is penal in nature, Rule 137 is strictly construed. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). "When reviewing a decision on a motion for sanctions, the primary consideration is whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc.*, 315 Ill. App. 3d at 244.

¶ 116   While we ultimately concluded that Lincoln was not Apollo's actual or apparent agent, we disagree that Jordan's arguments were without some basis, especially in light of our supreme court's decision in *Burgos*. Specifically, the court in *Burgos* explained that a broker of the insured can act as an agent of the insurer for purposes of accepting notice in other circumstances based on apparent authority where the insurer takes certain actions, such as allowing the broker to collect premiums, deliver the insurance policy, send notices such as renewals, and otherwise allows the broker to serve as the intermediary in its dealings with the insured. *Burgos*, 145 Ill. 2d at 432-33.

¶ 117   While a power of attorney was signed by Jordan on September 17, 2009, that was not specific to Jordan's request made several months later to change the vehicle on her policy nor is it conclusive of the agency question. Furthermore, Jordan did not testify at trial that she did not know Apollo was her insurance provider at the time she gave oral notice of the vehicle change request to Lincoln. Jordan was asked if she was currently insured by Apollo and responded "Well, after I speak with Lincoln Insurance, I'm not sure who the underwriter of the insurance is. As long as I have a policy being covered. So I'm not even sure at this point now who is the underwriter of the insurance. But I did speak with Lincoln the agent, so I am an insured *** driver of a vehicle." Even if Jordan did not know Apollo was the insurer at the time of the

vehicle change request, we do not find this conclusive of the agency question, particularly given the *Burgos* court's discussion about acquiescence in expanding the role of a broker in acting as intermediary between the insurer and insured creating the appearance of authority in the broker. *Id.* at 432-33. Accordingly, we find that the trial court did not abuse its discretion in denying Apollo's Rule 137 sanctions request.

¶ 118                                CONCLUSION

¶ 119   For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 120   Affirmed.